## CHELI *v.* CUDAHY BROTHERS CO.

1. FOOD—DISEASED MEAT—FINDING OF JURY.

   Evidence *held,* sufficient to support finding of jury that meat alleged to have been diseased when sold to plaintiff's decedent came from defendant meat packing company.

2. SAME—CIVIL LIABILITY OF SELLER—STATUTES.

   Sale of meat by packer who has used every reasonable means designed to guarantee safety of food for normal use does not impose upon him the absolute civil responsibility of an insurer although criminal liability is imposed by statute prohibiting sale of adulterated foods regardless of absence of proof of criminal intent (1 Comp. Laws 1929, §§ 5425–5442).

3. SAME—SALES—DUE CARE OF MEAT PACKER.

   Evidence *held,* to show no negligence whatever on part of meat packing company in preparation of fresh pork for sale which was consumed uncooked by plaintiff's decedent and after eating of which her death followed from trichinosis, where methods used in preparation measured up to standards required by Federal government and same methods were used as adopted by other packers in similar businesses (1 Comp. Laws 1929, §§ 5425, 5427).

4. NEGLIGENCE—STANDARD OF CARE.

   One engaged in trade or business is not held liable to higher degree of care than is average in the trade or business in which he is engaged.

5. FOOD—NEGLIGENCE OF MANUFACTURER OR PACKER.

   Manufacturer or packer of foodstuffs is liable for his negligent injuries to ultimate consumers.

6. PLEADING—NEGLIGENCE AND IMPLIED WARRANTY COUNTS IN SAME ACTION.

   Count based on alleged negligence of defendant in preparation of food for human consumption and count on implied warranty of freedom from ·foreign, poisonous or deleterious substances may be pleaded in same action.

7. SALES—IMPLIED WARRANTIES OF QUALITY.

Implied warranties of quality are limited by the uniform sales act (2 Comp. Laws 1929, § 9454).

8. SAME—UNDISCLOSED PURPOSE OF PURCHASER—USAGE OF TRADE—IMPLIED WARRANTY.

Record *held*, insufficient to disclose that purchaser of fresh pork informed seller that it was to be consumed uncooked or that such use is annexed to sale by usage of trade so as to raise implied warranty of fitness for that purpose (2 Comp. Laws 1929, § 9454, subds. [1, 5]).

9. SAME—IMPLIED WARRANTY.

Implied warranty as to fitness of food for human consumption should be applied only to food used in the usual, rather than the unusual and improper, manner (2 Comp. Laws 1929, § 9454.)

Appeal from Dickinson; Bell (Frank A.), J. Submitted April 29, 1934. (Docket No. 30, Calendar No. 37,672.) Decided June 4, 1934.

Case by Alfonso Cheli, administrator of the estate of Palmina Cheli, deceased, against the Cudahy Brothers Company, a Wisconsin corporation, and John Schinderle for the death of plaintiff's decedent, alleged to have been caused by diseased meat. Directed verdict and judgment for defendant Schinderle. From verdict and judgment for plaintiff against defendant Cudahy Brothers Company it appeals. Reversed without a new trial.

*Derham & Derham,* for plaintiff.

*Ray E. MacAllister* (*Shaw, Muskat & Paulsen,* of counsel), for defendant Cudahy Brothers Company.

BUTZEL, J. Plaintiff, as administrator of the estate of his deceased wife, brought this action against John Schinderle, a retail dealer in meats and gro-

ceries in the city of Iron Mountain, and Cudahy Brothers Company, a Wisconsin corporation. It is claimed that Mrs. Cheli contracted trichinosis as a result of the ingestion of uncooked sausage prepared from raw pork containing trichinæ; and that the meat was purchased from Schinderle, who in turn obtained it from Cudahy Brothers. The declaration contained two counts, one alleging that Cudahy Brothers negligently failed to use due care in the preparation of the meat. The other alleged the breach of an implied warranty that the meat was reasonably fit and proper for use as food, etc.

The defendant Schinderle was relieved from liability by a directed verdict, from which no appeal is taken.

Defendant Cudahy company, against whom a verdict was rendered, claims that the verdict of the jury was based on conjecture and speculation as to the origin of the meat involved, as well as the origin of the trichinæ. It further contends that, if it sold the meat in question, it was not derelict in the performance of any legal duty. Defendant claims that there is no known practical method by which the presence of trichinæ can be detected in raw pork and that, therefore, it cannot be held responsible for infection and death caused by bacteria absorbed into the body as a result of eating raw meat.

In 260 Mich. 496, we held the service of process in the instant case to be valid.

Appellant's contention that the verdict of the jury was based upon conjecture and speculation as to the source of the meat is not justified by the record. The testimony shows that on January 12, 1931, the deceased ordered about 30 pounds of fresh pork butts at Schinderle's store. Schinderle informed her that he had insufficient on hand at that

moment, but filled the order on the afternoon of the same day. It is conceded that the retailer purchased pork butts only from Armour & Company and Cudahy Brothers. It is shown by the proofs that during the month of January, Armour did not fill any orders from the Iron Mountain branch warehouses. Its record of deliveries from St. Paul show shipments arriving only January 8th, 15th and 17th. In view of the facts set out, therefore, the jury was justified in concluding the Cudahy meat was used to fill Mrs. Cheli's order on the afternoon of the 12th. This included additional evidence as to the methods of wrapping and packing employed by the two companies, as well as the presence of a Cudahy label on the box in which the butts were packed. The question was left to the determination of the jury and we see no reason to disturb its findings in this respect.

The testimony shows that there is no known, practicable or feasible method of determining whether hogs are infected with trichinæ. The bacteria can be detected only by microscopic inspection of the entire carcass of the animal, although the organism is generally found in the muscles. Until 1906, it was the practice of the government to make such examinations, but this practice was finally discontinued because it was found to be ineffective. The only known treatments generally effective in killing trichinæ are (1) freezing for 20 days at a temperature not higher than five degrees Fahrenheit, (2) raising the temperature of the meat to 170 degrees momentarily, or (3) a prescribed curing process. All of these processes, although effective, remove from the meat in a degree the quality of freshness demanded by the public. None of these methods were used by the appellant in its preparation of fresh pork, but the evidence clearly shows that all the ordinary,

usual and reasonable precautions taken by the meat packing industry were observed in the instant case.

Act No. 193, Pub. Acts 1895, as amended, 1 Comp. Laws 1929, §§ 5425–5442, prohibits the sale of adulterated foods, and 1 Comp. Laws 1929, § 5427, includes diseased or tainted meats within this classification. Appellee contends that a violation of this statute is negligence *per se*. To give the statute such force in this case would in effect impose upon the manufacturer the liability of an insurer, regardless of the unusual nature of the use to which its product is put, if the testimony of Dr. A. Behnke is to be taken as true. The witness, a graduate veterinarian, has served in the bureau of animal industry of the United States department of agriculture for over 35 years. He testified that:

"The microscopic examination of hog carcasses for trichina with a microscope is not effective. That is the fact that one may find trichina in the muscles that are usually so infected is no guaranty that the rest of the carcass is free from trichina. And it is impracticable to make a complete microscopic inspection for trichina of the entire carcass. * * *

"There is no way of detecting trichina or making an inspection so that a statement can be made that the entire carcass is free from trichina."

While this court has held that the statutes impose criminal liability upon those selling adulterated foods, regardless of the absence of proof of criminal intent or guilty knowledge (*People* v. *Snowberger,* 113 Mich. 86 [67 Am. St. Rep. 449]), we cannot hold that the legislature intended to impose upon the producer the absolute civil responsibility of an insurer in cases where every reasonable means designed to guarantee the safety of food for normal use has been employed.

The death of the deceased in the instant case resulted from the eating of raw pork, infected with trichinæ. It seems well established by the evidence that the danger to the public is reduced to a minimum if the meat is thoroughly cooked. The ultimate consumer, however, demands that fresh pork be offered for sale. If it has been completely sterilized by any of the means hereinbefore indicated, the meat loses this freshness.

There is no testimony revealing any negligence on the part of defendant. What breach of duty is chargeable to it? The fresh pork was prepared by the methods adopted by other packers engaged in similar businesses. The methods of preparation and inspection measured up to the standard demanded by the Federal government.

"No one is held liable to a higher degree of care than the average in the trade or business in which he is engaged." *Ketterer* v. *Armour & Co.,* 160 C. C. A. 111, 121 (247 Fed. 921, 931, L. R. A. 1918 D, 798).

Although it is our opinion that defendant was free from negligence in this case, we do not wish to be construed as departing from the principle that a manufacturer or packer of foodstuffs is liable to the ultimate consumer for injuries caused by his negligence. This is well settled in the law. *Hertzler* v. *Manshum,* 228 Mich. 416; *Tate* v. *Mauldin,* 157 S. C. 392 (154 S. E. 431).

Although the defendant cannot be held to respond in damages for negligence, may liability be imposed for breach of an implied warranty? The doctrine of implied warranty, while often confused with that of negligence, rests upon another principle of law. The two theories are often asserted in the same action and this has at times led to a confusion of reasoning.

The propriety of including both theories in separate counts in the same action was clearly pointed out by Justice WIEST in *Hertzler* v. *Manshum, supra.* That case also held that a manufacturer who prepared foodstuffs destined to be sold to and consumed by the public is bound by an implied warranty that its product is free from foreign, poisonous or deleterious substances. Implied warranties of quality are limited by the uniform sales act. Section 15 thereof, being 2 Comp. Laws 1929, § 9454, reads:

"Subject to the provisions of this act and of any statute in that behalf, there is no implied warranty or condition as to the quality or fitness for any particular purpose of goods supplied under a contract to sell or a sale, except as follows:

"(1) Where the buyer, expressly or by implication, makes known to the seller the particular purpose for which the goods are to be required, and it appears that the buyer relies on the seller's skill or judgment, whether he be the grower or manufacturer or not, there is an implied warranty that the goods shall be reasonably fit for such purpose."

Tested by this language, the record does not disclose that the buyer expressly or by implication made known to the seller that the pork was required for the purpose of making raw sausage, to be eaten in an uncooked state. Nor is there any showing that an implied warranty or condition as to the quality or fitness of raw pork as food in an uncooked condition is annexed to the sale by the usage of trade. See sub-section 5 of the same statute (3 Comp. Laws 1929, § 9454). Comparatively speaking, only an infinitesimal amount of the pork sold is eaten raw. It seems to follow logically that it is unfair to impose the liability of an insurer upon the meat packer through the implication of a warranty that pork is fit for human consumption in a raw state. This is

especially true in view of the fact that the danger of infection can be reduced almost to the vanishing point by ordinary cooking methods. Fresh pork is not ordinarily intended to be eaten raw. The warranty should be applied only to food used in the usual, rather than in the unusual and improper manner.

We are satisfied that defendant cannot be held liable either for negligence or breach of an implied warranty. It is unnecessary to discuss other alleged errors.

The verdict of the jury is reversed without new trial, with costs to appellant.

NELSON SHARPE, C. J., and POTTER, NORTH, FEAD, WIEST, and EDWARD M. SHARPE, JJ., concurred. BUSHNELL, J., did not sit.