Hart, J.
 

 The plaintiffs in these cases predicated their right to recover on the alleged violation by the defendant of the pure-food statutes of this state. The sections involved are as follows:
 

 Section 5774. “No person, within this state, shall * * * offer for-sale, sell or deliver, or have in his possession with intent to sell or deliver, a drug or article of food which is adulterated within the meaning of this chapter.”
 

 Section 5775. “* * * The term ‘food,’ as used in this chapter, includes all articles used by man for food, drink * * * or condiment, whether simple, mixed or compound. *.# * ”
 

 Section 5778. “Food, drink, confectionery or condiments aré adulterated within the meaning of this chapter * * * (5) if it consists wholly, or in part, of a diseased, decomposed, putrid, infected, tainted or rot
 
 *627
 
 ten animal or vegetable substance or article, whether manufactured or not or in the case of milk, if it is the product of a diseased animal * * (117 Ohio Laws, 157.)
 

 Section 12758. “Whoever * * * offers for sale or sells a drug, article of food, or flavoring extract which is adulterated or misbranded as the terms * * * ‘food,’ * * * ‘adulterated’ * * * are defined and described by law * * * shall be fined not less than twenty-five dollars nor more than one hundred dollars * #
 

 Section 12760. “Whoever sells, offers for sale or has in possession with intent to sell, diseased, corrupted, adulterated or unwholesome provisions without making the condition thereof known to the buyer, shall be fined not more than fifty dollars or imprisoned twenty days, or both.”
 

 The plaintiffs claimed that the defendant sold the pork infected with trichinae, thereby violating one or more of the above-mentioned sections of the statute and incurring absolute civil liability because of its consequent negligence as a matter of law. In the course of the trial, the defendant, as a matter of defense, introduced evidence to show that all meat sold by it had been inspected under government authority and that defendant had complied with all legal requirements relating to the sale of meat. It also introduced expert evidence to the effect that the first symptoms of trichinosis may come on in a few hours or may be delayed as long as two weeks, but that ordinarily the symptoms develop in from six to fourteen days after eating meat infected with trichinae.
 

 In view of this evidence and the law of the case as claimed by the plaintiffs, théy requested the court to submit to the jury before argument a special written request to charge, which the court refused'to give. The requested charge was as follows:
 

 
 *628
 
 “1 say to you that under the laws of Ohio it is unlawful to sell meat which is unwholesome or diseased; and if you find that the defendant sold meat to Ben Sanguedolce which was unwholesome or diseased by reason of the presence of. trichinae, that was negligence as a matter of law; and that would be true irrespective of any federal rules or inspections and also irrespective of state or city inspections, and also irrespective of the question as to whether the defendant did know or could know that the meat contained such trichinae parasites.”
 

 The plaintiffs’ sole claim of error in this case is based upon the refusal of the court to submit the requested charge as above quoted. If the charge was in proper form and correctly stated the law, it was prejudicial error upon the part of the trial court to refuse to give it. Section 11420-1 (5), G-eneral Code; 39 Ohio Jurisprudence, 1027, Section 310, and 1050, Section 325;
 
 Washington Fidelity National Ins. Co.
 
 v.
 
 Herbert,
 
 125 Ohio St., 591, 183 N. E., 537, and cases therein cited.
 

 The defendant offers two objections to this requested charge, either one or both of which, if valid, would justify the refusal of the court to give it. The first cl aim made by the defendant is that the requested charge does not correctly state the law because fresh pork which is not intended to be eaten raw or uncooked is not “diseased,” “infected” or “unwholesome” by reason of the presence of trichinae theréin, and for tha't reas.on the sale of such pork does not violate the pure-food statutes and does not constitute negligence
 
 per se.
 
 The contention of the defendant in this regard is that certain foods are intended to be eaten as sold without further preparation; that as to such foods the seller must make certain they may be so eaten safely and if not in such edible condition, the sale is, under the statute, negligence
 
 per
 
 se; that there are other foods which require preparation before they can be
 
 *629
 
 eaten; and that as to such foods the seller is not obliged or required to guarantee that they may be eaten safely however prepared, but only that they may be safely eaten if properly prepared by the usual processes. The defendant contends that the General Assembly, when it adopted the statute, knew raw pork was a host for the parasite which causes trichinosis; knew there was nothing the butcher or seller could do to determine whether a given carcass contained the parasite; knew fresh pork was not to be eaten without preparation; and knew cooking would destroy the parasite and make the meat entirely safe for human consumption. The defendant further contends that if, under the circumstances, the General Assembly meant to impose upon the seller this absolute and unavoidable burden resulting not only in criminal but civil liability without fault, it would have done so by direct language forbidding the sale of raw, fresh pork unless processed so as to kill the parasite and make the meat safe without reference to any preparation by the buyer. The defendant insists that the General Assembly, with knowledge that certain foods, including fresh pork, must be prepared before consumption, intended to prohibit the sale of raw pork or other food stuffs requiring preparation only if in such condition that after such proper preparation it would still be unfit for human consumption. These contentions of the defendant have the support of court decisions in a number of other jurisdictions.
 
 Feinstein
 
 v.
 
 Daniel Reeves, Inc.
 
 (N. Y.), 14 F. Supp., 167;
 
 Zorger, a Minor,
 
 v.
 
 Hillman’s,
 
 287 Ill. App., 357, 4 N. E. (2d), 900;
 
 Dressler
 
 v.
 
 Merkel, Inc.,
 
 284 N. Y. Supp., 697, affirmed without opinion, 272 N. Y., 574, 4 N. E. (2d), 744;
 
 Cheli
 
 v.
 
 Cudahay Brothers Co.,
 
 267 Mich., 690, 255 N. W., 414;
 
 Vaccarino
 
 v.
 
 Gozzubo
 
 (Md. App.), 31 A. (2d), 316.
 

 The defendant further contends that the former decisions of this court are not in conflict with its inter
 
 *630
 
 pretation of the statutes in question as above stated. In other words, defendant admits that the violation of the statute is negligence
 
 per se,
 
 but claims that the statute has never been held by this court to apply to unwholesome or unprepared food as to which the seller
 
 could not
 
 have knowledge of its unwholesome condition, citing as cases where the unwholesome condition of food was discoverable,
 
 Canton Provision Co.
 
 v.
 
 Gauder,
 
 130 Ohio St., 43, 196 N. E., 634 (liver pudding manufactured by defendant contained the ordure of a rat);
 
 Great Atlantic & Pacific Tea Co.
 
 v. Hughes, 131 Ohio St., 501, 3 N. E. (2d), 415 (pork sausage poisoned and putrified causing food poisoning or food infection) ;
 
 Portage Markets Co.
 
 v.
 
 George,
 
 111 Ohio St., 775, 146 N. E., 283 (blue-looking unwholesome veal).
 

 This court has not heretofore passed upon the direct question made in this case. The authorities in other jurisdictions are divided on this question. In a few cases interpreting pure-food statutes similar to ours, the courts have held on the basis of an implied warranty that a sale of fresh pork infested with trichinae parasites is a violation of the statutes.
 
 McSpedon
 
 v.
 
 Kunz,
 
 271 N. Y., 131, 2 N. E. (2d), 513, 105 A. L. R., 1497;
 
 Rinaldi
 
 v.
 
 Mohican Co.,
 
 225 N.
 
 Y.,
 
 70, 121 N. E., 471.
 

 Trichinae spiralis are found in carnivora, including rats, cats, pigs, hogs, bears and foxes. From two to three per cent of all live hogs are infested with these parasites. They cannot be seen with the naked eye, but are discoverable only with a microscope. However, since their presence or absence in only a small area is not a test as to their presence or absence in the entire carcass, all the tissues must be examined microscopically in order to make sure that the carcass is not infested. Obviously this renders this method of inspection impracticable. For that reason, the Un
 
 *631
 
 ited States Government, in connection with its meat-inspection program, has discontinued the practice of making microscopic examination of carcasses of hogs in an effort to discover the presence of the trichinae. Trichinae in pork can be destroyed by cooking at 137 degrees Fahrenheit, or by refrigeration for 20 days at a temperature of five degrees above zero.
 

 Read in the light of these circumstances, what responsibility or liability does our statute cast upon the seller of raw pork? Under the plain wording of Section 5778, General Code, the selling of infected animal-substance constitutes an unlawful act and it cannot well be denied that meat containing trichinae is infected. The fact that the seller is unable to make an inspection does not relieve him. This is indicated when the statute makes the seller of milk liable if it is the product of a diseased animal, although the seller has slight opportunity to know by what animal the milk was produced.- While trichinosis was not under consideration in the case of
 
 Portage Markets Co.
 
 v.
 
 George, supra,
 
 this court held that:
 

 "In an action for damages against a retail meat vendor, growing out of the sale of unwholesome veal in violation of the pure food laws of this state, it is not error for the court to charge the jury: ‘Whether or not the defendant intended to violate the law does not make any difference. Whether the defendant or its servant knew that the veal was unwholesome, if it was unwholesome at the time it was sold, makes no difference. Lack of intent to violate the law is no defense to the defendant. The defendant’s ignorance of the condition of the veal at the time it was sold is no defense.’ ”
 

 As pointed out in the case just cited, the element of knowledge was included in the statute (Section 12760, General Code) when originally enacted, but by amend
 
 *632
 
 ment in 1896 (92 Ohio Laws, 97), the element of knowledge on the part of the seller was eliminated. In the later case of
 
 Rubbo
 
 v.
 
 Hughes Provision Co.,
 
 138 Ohio St., 178, 34 N. E. (2d), 202, a case involving the sale of diseased rabbits, this court approved and followed the case of
 
 Portage Markets Co.
 
 v.
 
 George, supra.
 

 The inhibition of the statute against the sale of unwholesome food or infected meat means that only-wholesome food or uninfected meat may be lawfully sold. The definition of the term “wholesome” is “sound, tending to promote health”; “uninfected” means untainted or uncontaminated; not affected unfavorably; not impregnated or permeated with that which is bad or harmful. Trichinae-infected meat does not qualify under these definitions.
 

 If it were known that fresh pork offered over the counter for sale was infected with trichinae it would require much fortitude to assert that it was wholesome, uninfected and marketable, even though notice was given to the purchaser that all portions of it must be sufficiently cooked to render it harmless. The fact that it is not known to be infected at the time of sale does not render it wholesome or improve its marketability.
 

 The statute, in effect prohibitive rather than directive, was passed for the purpose of protecting and safeguarding the lives and health of the people. In harmony with that purpose, this court takes the view that absolute liability is cast upon the defendant as the seller of meat infested with trichinae, without regard to knowledge of its presence.
 
 Troietto
 
 v.
 
 G. H. Hammond Co.,
 
 110 F. (2d), 135. Any other rule would generally leave the injured purchaser, in his effort to place responsibility, without any practical remedy. This places a heavy burden upon the seller, but he
 
 *633
 
 may require a warranty from the person who sells the •meat to him and is in a position to know whether the meat has been made safe by refrigeration.
 
 McSpedon
 
 v.
 
 Kunz, supra.
 
 The seller also has a measure of protection in the obligation of the purchaser and the consumer not to eat pork in an uncooked state. One who eats pork with the knowledge or means of knowledge that it has not been properly cooked is guilty of contributory negligence precluding a recovery from the seller of such meat.
 
 Portage Markets Co.
 
 v.
 
 George, supra.
 

 The court in its general charge instructed the jury as to the provisions of the statutes and then gave the substance of the requested charge above referred to in the following language:
 

 “If the food be sold in violation of these statutes, or either of them, such sale constitutes upon the part of the seller what is known in law as negligence
 
 per se,
 
 that is, if the defendant violated the law of Ohio in the sale of this food product, it would by the fact of that violation alone be deemed guilty of negligence. Lack of intent to violate the law is no defense in this action. The fact that the defendant did not know of the condition of the pork, if it did not, at the time that it was sold, would constitute no defense, and that would be true irrespective of any federal rules or inspection and also irrespective of any state or city inspection.”
 

 Where the substance of a charge requested to be given before argument, is given after the argument, it does not cure the error of a refusal to give it before argument. But unless the charge requested to be given before argument in all respects correctly and accurately states the law, and unless it is specifically applicable to the issues involved, the error will not be regarded prejudicial.
 

 
 *634
 
 The requested charge here under consideration is not strictly accurate in form. The statement “if you find the defendant sold meat to Ben Sanguedolce which was unwholesome or diseased by reason of the presence of trichinae, that was negligence as a matter of' law,” permits the jury to assume that the meat was ■unwholesome or diseased by reason of the presence of trichinae, a fact necessary to be proven. The charge should have been in form or substance “if you find the defendant sold meat to Ben Sanguedolce, and that it was unwholesome or diseased, then such sale so made constituted negligence as a matter of law. ’ ’ This court is of the opinion that the trial court did not commit prejudicial error in refusing to give the requested charge.
 

 Even if it be conceded that the trial court erred in refusing to give such charge, the judgments should be affirmed for another reason. The answer of the defendant denied that it sold the meat to Sanguedolce and the state of the evidence leaves that issue in doubt; at least it was a question for the jury.- The evidence presented an issue of contributory negligence on the part of the plaintiffs in eating the pork in a raw or insufficiently cooked condition. The trial court properly charged the jury on the subject of contributory negligence including in its charge the proper application of the doctrine to the situation of one of the plaintiffs who was a minor.
 

 The verdict for the defendant, in the absence of interrogatories to test the grounds therefor, and there were no interrogatories submitted, must be regarded as a finding in favor of the defendant on one or the other of such issues, no sale of infected meat or contributory negligence. Under the two-issue rule, error
 
 *635
 
 as to the requested charge could not vitiate the verdict.
 
 Sites
 
 v.
 
 Haverstick,
 
 23 Ohio St., 626.
 

 The judgments of the Court of Appeals are affirmed.
 

 Judgments affirmed.
 

 Weygandt, C. J., Matthias, Zimmerman, Bell and-Turner, JJ., concur.
 

 Williams, J., concurs in the judgment.