MARY ARENA *vs.* JOHN P. SQUIRE COMPANY.

Suffolk.   April 8, 1947. — June 6, 1947.

Present: FIELD, C.J., QUA, DOLAN, RONAN, & WILKINS, JJ.

*Food.   Negligence,* Food, Contributory.   *Practice, Civil,* Verdict, New trial.   *Jury and Jurors.*

In an action against a meat packer for injuries resulting from trichinosis sustained by one who ate fresh pork infested with trichinae, which had been purchased from a retailer to whom the defendant had sold it without making any test to ascertain the presence of trichinae, testimony by an expert that the presence of trichinae in the carcass of a hog could be determined by the microscopic examination of any muscle, that it was not necessary to examine every muscle, and that it would make no difference what muscle was selected for the test, warranted a finding of negligence on the part of the defendant.

At the trial of an action by a woman for injuries sustained through eating pork infested with trichinae, testimony respecting methods used by the plaintiff in cooking the pork did not require a ruling of contributory negligence on her part.

An exception by a defendant to the denial of motions that a verdict be set aside and for a new trial, based solely on the fact that, on their return to court on a Monday, the jury, who had separated after sealing a verdict on the previous Friday, were required to return to the jury room and reconsider the verdict without previously being asked by the trial judge whether anyone had talked with any juror during their separation, was overruled where the defendant had not saved an exception at the time the jury were sent back to their jury room on Monday and there was nothing to show what evidence, if any, was introduced at the hearing of the motions.

TORT.   Writ in the Superior Court dated July 17, 1941. The case was tried before *Hudson,* J.

*H. W. Cole,* (*C. W. O'Brien* with him,) for the defendant.
*W. H. McLaughlin,* for the plaintiff.

RONAN, J.  This is an action of tort to recover damages
for illness from trichinosis resulting from eating fresh pork
shoulder which had been processed and sold by the de-
fendant, a packer, and which was thereafter purchased on
October 17, 1936, by the plaintiff from a retail dealer.  The
pork was alleged to have been infested with trichinae or
parasitic worms, which breed and multiply when taken into
the human system and after getting into the blood stream
become lodged and encysted in the muscles.  The plaintiff
had a verdict upon a count based on negligence.  The case
is here upon the exceptions of the defendant to the denial
of a motion for a directed verdict, to certain rulings on
evidence, and to the denial of a motion for a new trial and
of a motion to set aside the verdict which was returned
after the jury had separated and had then again been
given the case for further consideration.

The defendant does not argue that the evidence was not
sufficient to warrant findings that the pork was put upon
the market by the defendant, that it contained trichinae,
that it was purchased by the plaintiff from a retail dealer,
and that as a result of eating the pork the plaintiff became
ill.  The defendant contends that the evidence does not
show any negligence on its part.  It introduced evidence
tending to show that a packer is unable to determine with
any degree of certainty that the carcass of a hog does not
contain trichinae without taking so many specimens as to
destroy the carcass as salable food, except in instances
where the first specimens show the presence of these para-
sites; that the absence of the parasites in the specimens
does not indicate that they are not present in some other
portion of the carcass; that the inspections made under
Federal and State regulations do not require any tests for
trichinae; that the presence of trichinae cannot be detected
by any known practical method of inspection; and that
fresh pork is not intended to be eaten raw and, even if it
does contain trichinae, it is not unwholesome if properly
cooked.  Doubtless, the testimony which was introduced

by the defendant tends to support these various factual matters relied upon by it, and would justify an expectation on its part that the jury would not find that it was negligent in failing to discover the presence of the trichinae in the pork which the plaintiff consumed. [1] But there was evidence pointing in another direction. The plaintiff called as an expert one who had practised medicine and surgery for twenty-seven years and had studied trichinosis while at medical school and during his internship at a hospital, and who had observed trichinosis "in the hog and in the individual." He had made a special study of this disease, and his testimony, which was given in much detail concerning the history of the disease, its cause, nature, characteristics and termination in individual cases, seemingly showed considerable familiarity with the subject even though the instant case was the only one he had met in private practice. He first examined the plaintiff in November, 1945, when he made a clinical diagnosis of trichinosis, and this diagnosis was confirmed by a microscopic examination which he caused to be made by another physician of a piece of flesh he had removed from the plaintiff's leg and which showed many trichinae in different forms. It was implicit in the ruling by the judge admitting the foregoing testimony of the first physician that he found that he was qualified to testify as an expert upon this disease. It was the duty of the presiding judge to determine the qualifications of the witness. His decision being one of fact, it is not to be reversed unless there is no evidence to warrant his conclusion. We cannot say that as matter of law there was a lack of such evidence. *Bierce* v. *Stocking,* 11 Gray, 174. *Hardiman* v. *Brown,* 162 Mass. 585. *Commonwealth* v. *Bartolini,* 299 Mass. 503, 513. *Commonwealth* v. *Capalbo,* 308 Mass. 376, 380. *Commonwealth* v. *Noxon,* 319 Mass. 495, 538–539. *Commonwealth* v. *Bellino,* 320 Mass. 635.

This expert testified that the presence of trichinae in the carcass of a hog could be determined by the microscopic

---

[1] *Ketterer* v. *Armour & Co.* 247 Fed. 921. *Cheli* v. *Cudahy Brothers Co.* 267 Mich. 690. *Dressler* v. *Merkel, Inc.* 247 App. Div. (N. Y.) 300. *Lucey* v. *Harstedt,* 270 App. Div. (N. Y.) 900. *Tavani* v. *Swift & Co.* 262 Pa. 184.

examination of any muscle, that it was not necessary to examine every muscle, and that it would make no difference what muscle was selected for the test. The jury were free to give such weight to this testimony as they deemed appropriate, and there was no error of law if they chose to adopt this testimony as true in preference to that of the defendant's experts. The defendant did not make any test to ascertain the presence of trichinae. The jury could find that in preparing the fresh pork and putting it upon the market the defendant failed to exercise a reasonable degree of care in order that the health of the consumer would not be impaired by eating the pork. The negligence of the defendant was properly left to the jury. [1]

The plaintiff urges that negligence of the defendant may also be predicated upon violation of G. L. (Ter. Ed.) c. 94, § 150, which imposes a penalty upon one who sells any product of a diseased animal or any tainted, diseased or unwholesome meat, without disclosing its condition to the buyer, except where the article is packed in a container so that its condition cannot be ascertained by a reasonable inspection. This statute has been construed and applied in various decisions of the court, *Schuler* v. *Union News Co.* 295 Mass. 350; *Mellace* v. *John P. Squire Co.* 306 Mass. 515; *Flynn* v. *Growers Outlet, Inc.* 307 Mass. 373; *Commonwealth* v. *Economy Grocery Stores Corp.* 313 Mass. 70, while in other decisions we have said that its application to the particular facts presented was doubtful, *Flynn* v. *First National Stores Inc.* 296 Mass. 521, 524, and in other decisions, where negligence was made out at common law, it became unnecessary to decide whether liability might also be established under the statute. We think that is the proper course to adopt here. *Flynn* v. *First National Stores Inc.* 296 Mass. 521. *Bergantino* v. *General Baking Co.* 298 Mass. 106, 108. In passing it might be said that there is a conflict of authority in other jurisdictions as to whether

---

[1] *Ward* v. *Great Atlantic & Pacific Tea Co.* 231 Mass. 90. *Tonsman* v. *Greenglass*, 248 Mass. 275. *Richenbacher* v. *California Packing Corp.* 250 Mass. 198. *Doyle* v. *Continental Baking Co.* 262 Mass. 516. *O'Brien* v. *Louis K. Liggett Co.* 282 Mass. 438. *McSpedon* v. *Kunz*, 271 N. Y. 131. *Greco* v. *S. S. Kresge Co.* 277 N. Y. 26. *Catani* v. *Swift & Co.* 251 Pa. 52.

statutes similar to our own should be applied to pork infested with trichinae, which is not unwholesome when properly cooked, where the evidence showed that the seller could not be charged with knowledge of the presence of trichinae. [1]

The plaintiff prior to the purchase of the pork had lived in this country for four months. There is nothing to show that she knew that by subjecting the pork to a heat of one hundred thirty-seven degrees Fahrenheit any live trichinae would be killed. She had cooked pork a few times before. She "had always cooked meals and run a house and . . . she could cook everything." She testified as to the manner in which she cooked the patties from meat cut from the fresh shoulder, the method she employed in roasting the remainder of the fresh shoulder, and the tests she made from time to time to ascertain whether the patties and the shoulder were sufficiently cooked. The patties were fried in oil until they were brown on the inside, and the shoulder was roasted for more than two hours in an oven at which she set the heat at four hundred degrees. The jury could find that she cooked the pork as thoroughly as could be reasonably expected, and that she was not contributorily negligent. *Holt* v. *Mann,* 294 Mass. 21, 24. *Botti* v. *Venice Grocery Co.* 309 Mass. 450, 453.

The jury took the case on a Friday and returned a sealed verdict on the following Monday morning. The judge ordered the sealed verdict to be returned to the jury, and the jury retired after the judge told them that if they desired additional instruction they could put the questions in writing and he would consider them. The jury soon returned with a written question concerning which the judge and counsel conferred and agreed upon the answer after the form of the question had been changed. The jury then returned with a verdict for the plaintiff. The defendant subsequently filed a motion to set aside the verdict and

---

[1] *Troietto* v. *G. H. Hammond Co.* 110 Fed. (2d) 135. *Feinstein* v. *Daniel Reeves, Inc.* 14 Fed. Sup. 167. *Zorger* v. *Hillman's,* 287 Ill. App. 357. *Cheli* v. *Cudahy Brothers Co.* 267 Mich. 690. *Dressler* v. *Merkel, Inc.* 247 App. Div. (N. Y.) 300, affirmed 272 N. Y. 574. *Blume* v. *Trunz Pork Stores, Inc.* 269 App. Div. (N. Y.) 1059. *Lucey* v. *Harstedt,* 270 App. Div. (N. Y.) 900. *Leonardi* v. *A. Habermann Provision Co.* 143 Ohio St. 623.

another motion for a new trial, one of the grounds of which was that there was error in sending the jury out in these circumstances for further deliberation. The specific complaint is that the judge did not determine whether anyone had talked with any juror concerning the case after they had separated on Friday and before they came to court on Monday morning. The ascertainment of that fact by the judge would have been proper in order to insure the impartiality of any verdict that the jury might thereafter return. *Charles* v. *Boston Elevated Railway*, 230 Mass. 536. *Dziegiel* v. *Westford*, 274 Mass. 291. If the defendant believed that its rights were prejudiced by the omission of the judge to make such an inquiry, it should have saved an exception before the jury retired, *Low Supply Co.* v. *Pappacostopoulous*, 283 Mass. 633, 636; *Belkus* v. *Murdoch*, 315 Mass. . 86, 88; and the failure to take an exception then did not give the defendant the right as matter of law to raise the point on a motion for a new trial or a motion to set aside the verdict, *Lonergan* v. *American Railway Express Co.* 250 Mass. 30; *Commonwealth* v. *McKnight*, 289 Mass. 530; *Robinson* v. *Trustees of New York, New Haven & Hartford Railroad*, 318 Mass. 121, 133, 134, although the lack of an exception during the trial would not prevent the judge from considering the motions if he saw fit to entertain them. *Commonwealth* v. *Dascalakis*, 246 Mass. 12. *Farrell* v. *Matchett*, 310 Mass. 87. The record does not show what evidence, if any, was introduced at the hearing on the motions. There is not the slightest intimation that anyone spoke to any of the jurors after they separated on Friday and before they came to court on the following Monday or that the defendant had been harmed. The defendant seemingly rested upon the bald fact that the jury were sent out without any inquiry by the judge as to whether anyone had talked with them about the case. The judge, in so far as appears, made no rulings of law. He simply denied the motions. He might properly have come to that conclusion on the ground that the defendant waived the making of such an inquiry by the judge. A party having knowledge of a matter that might affect the integrity or impartiality

of a jury cannot remain silent and take his chance that the verdict may be favorable and then complain if an adverse verdict is returned. *Hallock* v. *Franklin,* 2 Met. 558. *Rowe* v. *Canney,* 139 Mass. 41. *Randolph* v. *O'Riordon,* 155 Mass. 331. *Hill* v. *Greenwood,* 160 Mass. 256. The remaining question is whether the denial of the motions constitutes an abuse of sound judicial discretion. It is plain that there was no such abuse. *Davis* v. *Boston Elevated Railway,* 235 Mass. 482. *Lonergan* v. *American Railway Express Co.* 250 Mass. 30. *Bartley* v. *Phillips,* 317 Mass. 35.

*Exceptions overruled.*