MARGARET BORRELLI & another *vs.* TOP VALUE ENTERPRISES, INC. & another.

Suffolk.    May 7, 1969. — June 2, 1969.

Present: WILKINS, C.J., WHITTEMORE, CUTTER, SPIEGEL, & REARDON, JJ.

*Evidence,* Relevancy and materiality, Of testing in manufacture. *Practice, Civil,* Exceptions: general exception.

A general exception to the admission of evidence must be overruled if the evidence was competent for any purpose. [113]

At the trial of an action for alleged negligent design and manufacture by the defendant of a carpet sweeper which the plaintiff was holding when she suffered an electric shock while plugging it into a wall connection,

testimony by an electrical engineer, who had examined the sweeper and had been in the defendant's research and development department for some years and described the tests and inspections sweepers received, that the plaintiff's complaint was the first of that nature received during those years, was admissible to show that the defendant was using reasonable testing procedures.  [113]

TORT.  Writ in the Superior Court dated July 25, 1963.

The action was tried before *Forte*, J.

*Howard I. Rosen* for the plaintiffs.

*Robert A. Curley* for the defendants.

WILKINS, C.J.   This is an action of tort by Margaret Borrelli for personal injuries and by her husband, Raymond Borrelli, for consequential damages resulting from an electric shock she suffered while using a carpet sweeper[1] sold her by the defendant Top Value Enterprises, Inc. (Top Value) and manufactured by the defendant Bissell, Inc. (Bissell).  The plaintiffs' declaration alleges that Bissell negligently designed and manufactured "a vacuum cleaner" and that there were breaches of warranty in the sale by Top Value.  The jury returned verdicts for the defendants.  The plaintiffs' sole exception is to a ruling on evidence.

On a date not disclosed in the record, but inferably in December, 1961, the female plaintiff, at the store of Top Value, ordered a Bissell carpet sweeper, which later arrived at the store from Bissell in a sealed carton.  It was sent to the plaintiffs' home, where it remained in the sealed carton until January 7, 1962, when it was removed by the male plaintiff and first used by Mrs. Borrelli.

The sweeper has a hollow metal rod about two feet long. The top of the rod is curved for a handle and is insulated. The rest of the rod is not insulated.  On an uninsulated part of the rod there is a switch from which wires run through the rod.   At the bottom of the rod is the sweeper apparatus. From the switch there is a cord which is made up of wires covered by insulation.  Mrs. Borrelli received the shock when plugging the cord into a wall connection while holding the metal rod.

---

[1] The declaration calls the appliance "an electric vacuum cleaner."

The record shows that at least nine witnesses testified, six called by the plaintiffs and three by the defendants. Two of the plaintiffs' witnesses were experts. The three defendants' witnesses were experts, one of whom, Carl A. Lindberg, since 1960 had been an electrical engineer in the Bissell research and development department. On September 30, 1966, he examined this sweeper, the plaintiffs having previously refused the defendants' request for an inspection. There was no indication of any failure, and it functioned fairly well and, as far as he could see, it was a good appliance — as good as new. He saw that the leads going down the handle to the motor had been cut and spliced. This was an indication to him that an electrician had done something to the sweeper. Bissell does not send out units with this type of splice.

The witness described the tests and inspections sweepers receive in the course of manufacture. Before manufacture, "vacuum cleaners" must first clear Underwriters Laboratories. A unit or several units are built and are passed through a large series of tests and minute inspections. After acceptance a folder is issued with all specifications of the materials, photographs of their relative positions, and all the test data taken off the unit. This becomes a reference folder for the reëxamination service. Then the manufacturer proceeds with manufacture, and reëxamination service men who drop in unannounced and unexpectedly at irregular intervals, go into the production line and investigate every piece of material which goes into the unit, test the results and procedures, pull units out of storage, and may even go out and buy a unit, put it through inspection to make sure that everything conforms to the original specifications. Most companies operate on a probability curve in which they will take ten per cent of the units coming down the line and test them. At Bissell a 100% inspection on all parts is run. These units go through two 1,000 volt die-electric tests.

This entire operation falls under the witness's supervision, and he is familiar with the production of this unit. Since

1960 the number of these units produced is approaching the million mark.

Counsel for the defendants asked, "Can you tell us with relation to this particular sweeper how many claims or complaints you have had . . . since that time [1960]?" The witness answered, "This is the first complaint of this nature."

The plaintiffs' exception was general and must be overruled if the evidence was competent for any purpose. *Solomon* v. *Dabrowski*, 295 Mass. 358, 359. *Irving* v. *Goodimate Co.* 320 Mass. 454, 460. *Costonis* v. *Medford Housing Authy.* 343 Mass. 108, 116.

The objection that Lindberg was not qualified to answer is without basis. The judge could conclude that the witness was in a position to know about complaints, and there was ample evidence to warrant that conclusion. *Amory* v. *Commonwealth*, 321 Mass. 240, 259. *Arena* v. *John P. Squire Co.* 321 Mass. 423, 425. *Boston Gas Co.* v. *Assessors of Boston*, 334 Mass. 549, 573.

The burden was on the plaintiffs to prove their allegation that the sweeper was negligently designed and manufactured. The question asked the witness was material on that issue as tending to show that Bissell was using reasonable testing procedures, a matter as to which he had testified in some detail. See *Carter* v. *Yardley & Co. Ltd.* 319 Mass. 92, 94; Restatement 2d: Torts, § 395.

*Exceptions overruled.*