POPOUR v HOLIDAY FOOD CENTER, INC

KIRCOS v HOLIDAY FOOD CENTER, INC

Docket Nos. 73090, 73219. Submitted December 18, 1984, at Detroit.—
Decided February 6, 1985. Leave to appeal applied for.

In Docket No. 73090, plaintiffs Edward Popour and Adelheid
Popour brought a negligence action in the Oakland Circuit
Court against defendant Holiday Food Center, Inc. Holiday
Food in turn brought a third-party action against John Morrell
& Co. In Docket No. 73219, plaintiff John Kircos brought a
negligence action in the Wayne Circuit Court against defen-
dants Holiday Food Center, Inc., and John Morrell & Co. The
common allegations of the complaints are that fresh pork was
purchased from Holiday Food on July 1, 1981, and that, after
consuming the pork, plaintiffs Edward Popour and John Kircos
were stricken with trichinosis. Holiday Food allegedly pur-
chased the pork from Morrell. Plaintiffs alleged that the defen-
dants were negligent by marketing infected pork, and that

REFERENCES FOR POINTS IN HEADNOTES

[1] 35 Am Jur 2d, Food, Drugs, and Cosmetics §§ 89, 92.
  63 Am Jur 2d, Products Liability § 391.
  Liability of manufacturer or seller for injury caused by food or food
  product. 77 ALR2d 7.
[2] 57 Am Jur 2d, Negligence §§ 34, 75.
[3] 35 Am Jur 2d, Food, Drugs, and Cosmetics §§ 35, 96.
  63 Am Jur 2d, Products Liability § 305.
  Liability of packer, food store, or restaurant for causing trichinosis.
  96 ALR3d 451.
[4] 57 Am Jur 2d, Negligence § 1.
[5, 6] 57 Am Jur 2d, Negligence §§ 39, 66, 67.
[6] 57 Am Jur 2d, Negligence § 44.
[7] 63 Am Jur 2d, Products Liability §§ 481, 526.
  Implied warranty of fitness for particular purpose as including
  fitness for ordinary use. 83 ALR3d 656.
  What constitutes "particular purpose" within meaning of UCC § 2-
  315 dealing with implied warranty of fitness. 83 ALR3d 669.
[8] 63 Am Jur 2d, Products Liability §§ 489, 497, 674.
[9] 63 Am Jur 2d, Products Liability §§ 341, 342.
  Failure to warn as basis of liability under doctrine of strict liability
  in tort. 53 ALR3d 239.

limited warranties were breached. Three motions for summary judgment were brought in No. 73090. The trial court, David F. Breck, J., entered an order denying Holiday's motions for summary judgment against the Popours and Morrell and also denying Morrell's motion for summary judgment against Holiday. Holiday and Morrell appeal therefrom by leave granted. In No. 73219, the trial court, Maureen P. Reilly, J., granted a motion for summary judgment by defendants Holiday and Morrell. Plaintiff Kircos appeals from that order as of right. The appeals were consolidated by the Court of Appeals. *Held:*

1. Violation of MCL 289.707, concerning prohibitions of certain acts and their causes, and MCL 289.716, concerning adulteration of foods, is not negligence per se. The Legislature, in enacting these sections of the Michigan Food Law, did not intend to impose the absolute civil responsibility of an insurer upon the seller.

2. There was no duty on the part of the sellers to inspect the fresh pork for trichinae spiralis. There was no negligence; the risk of harm to the individual purchasers in consuming uninspected pork was minimal.

3. Defendants did not breach an implied warranty of fitness for a particular purpose.

4. Where the danger is apparent, as is the danger of consuming improperly cooked pork, the failure of a seller to warn the purchaser is inconsequential. Defendants had no duty to warn the plaintiffs of such dangers.

The order in Docket No. 73219 is affirmed; the order in Docket No. 73090 is reversed.

1. Food — Negligence.

The Legislature, in enacting the sections of the Michigan Food Law concerning prohibitions of certain acts and their causes and adulteration of foods did not intend to impose upon a seller the absolute civil responsibility of an insurer; violation of such provisions is therefore not negligence per se (MCL 289.707, 289.716; MSA 12.933[7], 12.933[16]).

2. Negligence — Duty.

The element of duty in a negligence action is ordinarily one of law for the court to decide; duty is essentially a question of whether the relationship between the actor and the injured person gives rise to any legal obligation on the actor's part for the benefit of the injured person.

3. Food — Pork — Inspection for Trichinae Spiralis.

A retailer or packer does not have an obligation to inspect or treat fresh pork for the destruction of trichinae spiralis.

4. Negligence — Risk.

Negligence is conduct involving an unreasonable risk of harm; where an act is one which a reasonable man would recognize as involving a risk of harm to another, the risk is unreasonable and the act is negligent if the risk is of such magnitude as to outweigh what the law regards as the utility of the act or the particular manner in which it is done.

5. Negligence — Utility of Actor's Conduct.

Factors which are important in determining what the law regards as the utility of the actor's conduct for the purpose of determining whether the actor is negligent are: (1) the social value which the law attaches to the interest which is to be advanced or protected by the conduct, (2) the extent of the chance that this interest will be advanced or protected by the particular course of conduct, and (3) the extent of the chance that such interest can adequately be advanced or protected by another and less dangerous course of conduct.

6. Negligence — Risk.

Factors which are important in determining the magnitude of the risk for the purpose of determining whether the actor is negligent are: (1) the social value which the law attaches to the interests which are imperiled, (2) the extent of the chance that the actor's conduct will cause an invasion of any interest of the other or of one of a class of which the other is a member, (3) the extent of the harm likely to be caused to the interests imperiled, and (4) the number of persons whose interests are likely to be invaded if the risk takes effect in harm.

7. Products Liability — Implied Warranty.

A defect is established under the implied warranty theory of fitness for a particular purpose by proof that the product is not reasonably fit for its intended, anticipated or reasonably foreseeable use.

8. Food — Pork.

Fresh pork is intended to be cooked; cooking is the particular purpose for which fresh pork is to be used.

9. Products Liability — Apparent Dangers — Duty to Warn.

Any failure to warn may be regarded as inconsequential in the circumstances of a case where the danger of injury is apparent.

*Canyock & Thumm, P.C.* (by *Michael P. Bolton*), for Edward and Adelheid Popour.

*Sachs, Nunn, Kates, Kadushin, O'Hare, Helve-ston & Waldman, P.C.* (by *Elizabeth J. Larin*), for John Kircos.

*Honigman, Miller, Schwartz & Cohn* (by *Herschel P. Fink*), for John Morrell & Co.

Before: V. J. BRENNAN, P.J., and CYNAR and C. W. SIMON, JR.,* JJ.

CYNAR, J. Plaintiffs filed separate suits alleging negligence against the defendants. Motions for summary judgment under GCR 1963, 117.2(1) were brought by defendant John Morrell & Co., and joined by defendant Holiday Food Center, Inc., in both actions. Summary judgment was denied by Oakland County Circuit Court Judge David F. Breck in No. 73090. Summary judgment was granted by Wayne County Circuit Court Judge Maureen P. Reilly in No. 73219. The former action is before this Court on leave granted, the latter action is an appeal as of right. The cases were consolidated by this Court for appeal.

The common allegations of the complaints are that fresh pork was purchased from Holiday Food on July 1, 1981. After consuming the pork, plaintiffs Edward Popour and John Kircos were stricken with trichinosis. Holiday allegedly purchased the pork from Morrell. Plaintiffs alleged that the defendants were negligent by marketing infected pork, and that implied warranties were breached.

The first issue is whether summary judgment was properly granted for failure to state a claim on which relief can be granted under GCR 1963, 117.2(1). Plaintiffs claim that violation of MCL

---

* Circuit judge, sitting on the Court of Appeals by assignment.

289.707; MSA 12.933(7) and MCL 289.716; MSA 12.933(16) is negligence per se.

We disagree. In *Cheli v Cudahy Brothers Co,* 267 Mich 690, 694; 255 NW 414 (1934), the Supreme Court construed a predecessor statute in a similar context and stated:

"While this Court has held that the statutes impose criminal liability upon those selling adulterated foods, regardless of the absence of proof of criminal intent or guilty knowledge *(People v Snowberger,* 113 Mich 86 [67 Am St Rep 449] [71 NW 497 (1897)]), we cannot hold that the Legislature intended to impose upon the producer the absolute civil responsibility of an insurer in cases where every reasonable means designed to guarantee the safety of food for normal use has been employed."

In enacting the statutes we conclude that the Legislature did not intend to impose upon the seller the absolute civil responsibility of an insurer.

The next question is whether defendants were negligent in failing to inspect the pork for trichinae spiralis. The resolution of this matter depends on the question of duty. We must decide if the sellers had a legal obligation to inspect the fresh pork for trichinae spiralis.

In *Moning v Alfono,* 400 Mich 425, 438-439; 254 NW2d 759 (1977), *reh den* 401 Mich 951 (1977), the Court stated:

"Duty is essentially a question of whether the relationship between the actor and the injured person gives rise to any legal obligation on the actor's part for the benefit of the injured person." (Footnote omitted.)

Ordinarily, the element of duty in a negligence action is one of law for the court to decide. *Mon-*

*ing, supra,* p 438. *Aisner v Lafayette Towers,* 129 Mich 642, 645-646; 341 NW2d 852 (1983); *Langen v Maple Jackson Associates,* 138 Mich App 672, 676; 360 NW2d 270 (1984). We must decide if a seller of fresh pork has a duty to inspect for trichinae spiralis. It is not necessary for us to make any factual determinations to resolve this question.

The *Cheli* Court held that there was not such a duty. *Cheli, supra,* p 695. However, the *Cheli* Court relied on the standard of care customary in the industry to decide this question. This portion of *Cheli* was overruled in *Hill v Husky Briquetting, Inc,* 393 Mich 136; 223 NW2d 290 (1974). Therefore, we must consider the duty question further.

In *Moning, supra,* pp 432-433, the Court stated:

"It obscures the separate issues in a negligence case (duty, proximate cause and general and specific standard of care) to combine and state them together in terms of whether there is a duty to refrain from particular conduct.

"It is now established that the manufacturer and wholesaler of a product, by marketing it, owe a legal duty to those affected by its use. The duty of a retailer to a customer with whom he directly deals was well established long before the manufacturer and wholesaler were held to be so obligated. The scope of their duty now also extends to a bystander. All the defendants were, therefore, under an 'obligation for the safety' of Moning; they owed him a duty to avoid conduct that was negligent.

\* \* \*

"Negligence is conduct involving an *unreasonable* risk of harm." (Footnote omitted. Emphasis in original.)

2 Restatement Torts, 2d, § 291, p 54 suggests factors to be considered in determining whether an act is negligent:

"Where an act is one which a reasonable man would

recognize as involving a risk of harm to another, the risk is unreasonable and the act is negligent if the risk is of such magnitude as to outweigh what the law regards as the utility of the act or of the particular manner in which it is done."

2 Restatement Torts, 2d, § 292, pp 56-57, provides:

"In determining what the law regards as the utility of the actor's conduct for the purpose of determining whether the actor is negligent, the following factors are important:

"(a) the social value which the law attaches to the interest which is to be advanced or protected by the conduct;

"(b) the extent of the chance that this interest will be advanced or protected by the particular course of conduct;

"(c) the extent of the chance that such interest can be adequately advanced or protected by another and less dangerous course of conduct."

2 Restatement Torts, 2d, § 293, p 58, provides:

"In determining the magnitude of the risk for the purpose of determining whether the actor is negligent, the following factors are important:

"(a) the social value which the law attaches to the interests which are imperiled;

"(b) the extent of the chance that the actor's conduct will cause an invasion of any interest of the other or of one of a class of which the other is a member;

"(c) the extent of the harm likely to be caused to the interests imperiled;

"(d) the number of persons whose interests are likely to be invaded if the risk takes effect in harm."

In this situation we must determine whether a retailer or packer has an obligation to inspect or treat fresh pork for the destruction of trichinae

spiralis. This necessarily involves a determination of whether the magnitude of the risk of the retailer's or packer's not inspecting or treating fresh pork for destruction of trichinae justifies the burden imposed by such an obligation. There is social value in having fresh pork available at the lowest possible price. The consumer demands fresh pork. Treatment for the destruction of trichinae will destroy the meat's freshness. *Cheli, supra.* Treated pork is, essentially, no longer fresh pork.

The question then revolves around the inspection question. In *Cheli* the Court noted that microscopic inspection is not effective in inspecting for trichinae. Plaintiff suggests that newer inspection techniques are more effective[1] and that defendants were negligent in failing to employ them. However, negligence is conduct involving unreasonable risk. *Moning, supra.* Only 0.009 percent or one hog of every 11,500 examined are found to be infected with trichinae.[2] Federal regulations provide that fresh pork does not need to be treated for destruction of trichinae since fresh pork is customarily well-cooked before serving. 9 CFR 318.10 (1984). The chance that a consumer will contract trichinosis from uninspected pork is small because ordinary cooking methods almost entirely eliminate the danger. *Cheli, supra,* pp 695, 697. Given the relatively small number of hogs that would be discovered to be infected and the likelihood that the consumer will thoroughly cook the pork before consuming it, we cannot conclude that there was a duty to inspect on the part of the sellers. There was no negligence; the risk of harm to the individual purchasers in consuming uninspected pork was minimal.

---

[1] *Facts About Trichinosis,* Agricultural Research Service, USDA (April, 1969).

[2] *Ibid.*

Plaintiffs also claim that defendants breached an implied warranty of fitness for a particular purpose. We disagree. Under the implied warranty theory a defect is established by proof that the product is not reasonably fit for its intended, anticipated or reasonably foreseeable use. *Dooms v Stewart Bolling & Co,* 68 Mich App 5, 14; 241 NW2d 738 (1976), *lv den* 397 Mich 862 (1976); *Elsasser v American Motors Corp,* 81 Mich App 379, 384-385; 265 NW2d 339 (1978). Fresh pork is intended to be cooked; that is the particular purpose for which it is used. *Cheli, supra.* There has been no showing that this pork was unfit for cooking, which would kill the trichinae spiralis. *Scheller v Wilson Certified Foods, Inc,* 114 Ariz 159; 559 P2d 1074 (1976); *Hollinger v Shoppers Paradise of New Jersey, Inc,* 142 NJ Super 356; 361 A2d 578 (1976); *Cf., Elsasser, supra.*

Plaintiffs also suggest that defendants had a duty to warn purchasers about the dangers of consuming improperly cooked pork. We disagree. Where the danger is apparent, as in this case, failure to warn is inconsequential. *Durkee v Cooper of Canada, Ltd,* 99 Mich App 693; 298 NW2d 620 (1980), *lv den* 417 Mich 910 (1983).

The order in Docket No. 73219 is affirmed; the order in Docket No. 73090 is reversed.