Zimmerman, J.
To gain a fair perspective of this case and of the factors which apparently influenced the jury in returning its verdict for the defendants, an outline of parts of the evidence is necessary.
At the time of his injury on the afternoon of April 9, 1952, plaintiff was 10 years of age. He was in the fourth grade of school, received good marks, was a Cub Scout and had won a number of merit awards. At the trial he testified on direct *44 examination that, as he was walking around the concrete mixer, he slipped on the sand, and “I made a grab for the machine with my hand, slipped off the edge of it and went in.” This was the only evidence offered by plaintiff as to how the injury occurred.
On the cross-examination of plaintiff, the following transpired :
“Q. You could hear this mixer running the day the accident happened, couldn’t you, as you came up the sidewalk? A. Yes.
“Q. And you knew that cement was being mixed inside of it? A. I didn’t know it was being mixed inside.
“Q. But you knew the mixer was running? A. Yes.
“Q. 'And you knew that it would be dangerous to put your hand into it, didn’t you? A. I don’t understand.
“Q. Well, you knew that with the machine like that running it might be dangerous if you put your hand into or against that machine, didn’t you? A. Yes.
< Í * # *
“Q. When you fell, Ronald, how did you fall, could you kind of show us ? A. I don’t recall.
“Q. You don’t recall how you did fall? A. No.
“Q. Well, would you be good enough to come down here just a minute, please. (Witness leaves the stand.)
U * # *
“Q. If you will please, pretend you are walking up the sidewalk like this, and then just show us how you walked around the mixer. Pretend that chair is the mixer. Just come over here. Just show us, if you will please, on which side of the mixer you walked? A. I walked on this side.
“Q. You walked over to the right of the mixer. Where were you when you fell? Pretend this chair is a mixer? A. I don’t recall.
“Q. Were you a little bit past the mixer or right alongside of the mixer? A. I don’t know.
. “Q. You don’t know? A. No.
“Q. Can you show us how you fell? A. No. It happened so fast I don’t know.”
On the day the injury occurred, James Basky was laying ■ *45 bricks in the building of a chimney. Joseph J. Basky was in charge of operating the concrete mixer and was engaged in carrying concrete in buckets from the mixer to his brother. He testified that he was never away from the mixer for more than a few minutes at any time.
The blades which caused plaintiff’s injury were on the inside of a metal drum into which sand, concrete and water were poured. Extending outward from the opening of the drum was a flange or lip some three or four inches wide, designed to prevent the mixture from slopping out of the drum.
During the construction work, a number of children of all ages and sizes frequented the premises. They were chased away repeatedly by defendants and other workmen and were told to stay away. Plaintiff’s father had warned him to stay away from the new house and not go around any house that was being built.
Neither the defendants nor three witnesses they produced actually saw the injury. The three witnesses were a real estate dealer, a lumber salesman and a carpenter-contractor.
James Basky testified:
“I heard a thump and then I turned. * * * I seen Ronnie Centrello by the mixer # * I started to come down * * # I heard Ronnie Centrello holler, ‘My God, I cut off my finger.’ ”
After he got out of his automobile and as he was approaching the house under construction by the Baskys, the real estate dealer saw two children “playing in front of the concrete mixer.” As Joseph Basky and the three witnesses referred to were talking in a driveway near the concrete mixer they heard a scream, looked and saw plaintiff standing at the far end of and facing the mixer and holding one hand with the other. Plaintiff then started to run away.
Joseph Basky, who ran and caught up with him, testified as follows:
“Well, I caught him and I asked him where he lived. I said, ‘Come on, I will take you over to your mother,’ and he said, ‘I don’t want to go home’; he said, ‘My father will give me a licking.’ So I said, ‘Well, where do you live anyway?’ and he told me the house number. * * * He said, ‘That house over there.’ I had him by the hand in the meantime, around *46 his wrist. I put my handkerchief over it. 1 didn’t know whether the kid would faint or not, so I thought it would be best if he didn’t see. I took him over to the house. I knocked on the front door. There was a radio or something playing there. I knocked quite loud. I got no response there, and me being a little upset myself I thought to myself: the only thing to do now is go around to the back. We come off the porch there and started around in their driveway back to the house, back to the back door. That is when Ronald’s mother came out.
“Q. You then went with Ronald and his father to the hospital? A. Yes, I did.
“Q. What did Mr. Centrello say when he first came out? A. He said ‘Ronald,’ he said, ‘It wasn’t five minutes ago I told you not to go up there,’ and he said, ‘Look and see what you done,’ he said, ‘I told you,’ and he kept saying that as we were in the car going down to the hospital.”
The carpenter-contractor testified:
“Well, after the accident he started going towards the curb of the street. Joe was more active than the rest of us. He took after the boy, grabbed his hand there, like put a tourniquet on it, I imagine, started taking the boy towards his home. The boy was crying there, started to scream. He didn’t want to go home. I think he said he didn’t want to get a licking.”
The real estate dealer, who drove plaintiff, his father and Joseph Basky to the hospital, testified:
“Q. Who went with you to the hospital? A. Mr. Centrello went along.
“Q. And Ronald and Joe Basky? A. That is right.
“Q. Did you hear Mr. Centrello make any statement, did he say anything just shortly after he got into your car? A. Yes. He said he told him not five minutes before not to go up to the new house.”
The plaintiff’s father denied he said that.
Defendants offered as a witness a seven-year old boy, named Eddie Whittaker. The court examined him and declined to allow him to testify on the ground that he appeared too young to appreciate the nature and significance of an oath. Defendants then made a proffer of the testimony the witness would give if permitted to testify, which was to the effect that *47 on April 9,1952, he and plaintiff were playing near the concrete mixer attempting to cement bricks together, and that plaintiff removed cement from the mixer for that purpose, made another trip to the mixer for more cement, deliberately put his hand into the mixer and in so doing was injured.
On redirect examination, Joseph Basky testified:
“Q. Mr. Basky * * #. At the time you were standing in the driveway and heard Ronnie Centrello cry out and turned and looked towards the street and concrete mixer, did you see any other children besides Ronnie Centrello? A. Yes.
“Q. Was that child Eddie Whittaker, the little boy that was in here Friday? * * * A. Yes, it was.”
Plaintiff was recalled to the witness stand and the following ensued:
“Q. Was Eddie. Whittaker with you at the time you were hurt? A.- No.
“Q. Or anywhere around. A. No; not that I know of.”
We believe the foregoing represents a reasonably accurate presentation of some of the material evidence which the jury had before it.
Now as to a discussion of the legal questions involved.
This court has held in several instances that, even though the pleadings do not raise the issue of contributory negligence, if it arises in a case by virtue of the evidence, the court should charge on that subject. Bradley v. Cleveland Ry. Co., 112 Ohio St., 35, 146 N. E., 805; Fries v. Cincinnati St. Ry. Co., 138 Ohio St., 537, 37 N. E. (2d), 193; 29 Ohio Jurisprudence, 785, Section 234. Compare Schreiber v. National Smelting Co., 157 Ohio St., 1, 104 N. E. (2d), 4.
Should a different rule prevail with respect to 4‘assump-tion of risk”?
In the first place it must be conceded that by the weight of authority contributory negligence and assumption of risk are not identical — the essence of contributory negligence being carelessness and the essence of assumption of risk being venturousness. For a fuller discussion of the distinction, attention is directed to Masters v. New York Central Rd. Co., 147 Ohio St., 293, 301, 70 N. E. (2d), 898, 903; Porter, an Infant, v. Toledo Terminal Rd. Co., 152 Ohio St., 463, 90 N. E. (2d), 142; Mud- *48 rich, a Minor, v. Standard Oil Co., 153 Ohio St., 31, 36, 90 N. E. (2d), 859, 862; and Baldridge v. Wright Gas Co., Inc., 154 Ohio St, 452, 458, 96 N. E. (2d), 300, 304.
However, contributory negligence and assumption of risk, both affirmative defenses, are closely allied. They may coexist and be present in the same case. In Weber v. Eaton (C. C. A. D. C.), 160 F. (2d), 577, 578, 82 A. D. C., 66, 67, the court remarked:
“Contributory negligence and assumption of risk are so closely related as sometimes to be almost, if not entirely, indistinguishable. In cases which do not arise between master and servant, the two terms may well be considered synonymous in the sense that one who voluntarily places himself in a perilous position, when the potential danger is apparent, is not exercising ordinary care for his own safety.” ••
There are some cases which hold that assumption of risk is a form of contributory negligence (Tosty v. Morgan Co., 151 Wis., 601, 139 N. W., 402); others hold that in their legal effect the two doctrines are identical (Porter v. Cornett, 306 Ky., 25, 206 S. W. [2d], 83).
Therefore, if the evidence in a case calls for a charge on contributory negligence, even though that question is not raised by the pleadings, we see no good reason why a different attitude should be taken with respect to assumption of risk.
However, we can not ignore the fact that there is language in the opinion in Jones v. Erie Rd. Co., 106 Ohio St., 408, 409, 140 N. E., 366, 367, which is to the contrary.
In the instant case, the trial court did charge on both contributory negligence and assumption of risk. No objection is raised as to the substance of what the court said, and certainly there was no overemphasis by the court on either score.
Under the evidence in this case and the deductions which might reasonably be drawn therefrom, the jury might have found the defendants negligent and the plaintiff contributorily negligent, or it might have found that plaintiff deliberately and heedlessly exposed himself to an apparent risk.
At any rate, the jury returned its general verdict for the defendants. It is not contended that a charge on contributory negligence was improper or that the charge given by the court *49 on that subject was inaccurate. Therefore, in view of the general verdict for the defendants, the charge on assumption of risk, assuming its impropriety and that assumption of risk is something independent and apart from contributory negligence, did not constitute reversible error under the application of the two-issue rule.
Such rulé is that, where a general verdict is returned for one of the parties, and the mental processes of the jury have not been tested by special interrogatories to indicate which issue was determinative of the verdict, it will be presumed that all issues were resolved in favor of the prevailing party. And where a single determinative issue has been presented free from error, error in presenting another issue will be disregarded. The Ohio cases expounding and applying such rule, beginning with Sites v. Haverstick, 23 Ohio St., 626, are numerous. Among them are Jones v. Erie Rd. Co., supra; Ochsner, Admr., v. Cincinnati Traction Co., 107 Ohio St., 33, 140 N. E., 644; Knisely v. Community Traction Co., 125 Ohio St., 131, 180 N. E., 654; Leonardi v. A. Habermann Provision Co., 143 Ohio St., 623, 56 N. E. (2d), 232; Bush, Admr., v. Harvey Transfer Co., 146 Ohio St., 657, 67 N. E. (2d), 851.
Before argument, plaintiff presented to the court 12 special instructions in writing which he requested to be submitted to the jury. Nine of them were given, three refused.
Of the special instructions given, the first informed the jury “that the portion of the street between the sidewalk and curb is not private property; and that the public, including children, have a right to use the same.”
The second is as follows: “The court says to you, as a matter of law, that one who, without adequate protection or warning, exposes in or adjoining a public street, which children have a right to — and do in fact — frequent, motor driven machinery in operation which may be inherently dangerous, is negligent if injury to persons might be reasonably anticipated.”
The third deals with the degree of care to be exercised by minors of plaintiff’s age. '
The fourth after reciting the facts admitted by the defendants continues with the statement:
“I, therefore, charge you, as a matter of law, that if you *50 find by the greater weight of the probabilities that an ordinary prudent and careful person, under the same or similar circumstances, would have shut off the motor of the concrete mixer, or placed barricades around the mixer, to prevent people from coming in contact with it, or would have placed some person to guard the mixer while it was in operation and running, then 1 charge you, as a matter of law, that these defendants were negligent.
“And if you further find by the greater weight of the probabilities that such negligence, or some part thereof, was the sole, direct and proximate cause of Ronald Centrello’s injuries, then your verdict in this case must be for the plaintiff, Ronald Centrello.”
The fifth sets forth various elements which the jury might consider in awarding the plaintiff damages in the event of a finding in his favor.
The sixth states:
“Nine or more of your number may agree upon a verdict in this case, and nine or more of your number may fix the amount of damages.”
The seventh advised the jury that a lawyer should not be criticized or penalized for making objections during the course of a trial, that certain conduct or remarks of a judge should not influence the jury in arriving at a verdict, and that the jury is the sole arbiter of the facts.
The eighth quotes a part of Section 12639, General Code, relating to obstructions on public sidewalks, and then continues:
“I, therefore, charge you, as a matter of law that if you find by the greater weight of the probabilities, that the defendants, Joseph and James Basky, violated this statute, at the time of this accident, then this would be negligence as a matter of law.
“I further charge you that if you find, by the greater weight of the evidence, that the violation of this statute by the defendants was the sole, direct and proximate causé of injuries to Ronald .Centrello,'then your verdict in this case must be for the plaintiff, Ronald Centrello.”
The ninth is in the following language:
“An article, ‘dangerous per se’ — or, in other words, is in *51 itself dangerous, is one which, by or through itself .may inflict injuries without human aid or instrumentality.
“The court says to you, as a matter of law, that the owner of machinery which is capable in its nature of doing injury to persons, including children, who leaves it exposed and unguarded in a public place, is liable to one who is injured as a natural and probable consequence without fault upon his own part. ’ ’
Of the special instructions refused the first is as follows:
‘ ‘ The court says to you, as a matter of law, that a contract- or who leaves in a public place — upon which persons, and among them children, have to pass — a dangerous machine in active operation which may cause serious injury to anyone who comes into contact with it, is guilty of negligence.”
The second reads:
“The duty of care imposed on one using dangerous machinery which is in active operation in or adjoining a public street or highway toward members of the public includes the duty toward children playing in the street to avoid possible injuries to them by reason of their being attracted to these objects in the course of their play.
“I, therefore, charge you that an object may be a dangerous attraction, imposing liability for injury to a child, where it is located in a public highway or adjacent thereto — although the same thing would impose no liability if located upon private premises where children have no right to go.”
The third and last recites:
“A person owning premises abutting a street is under a duty to use reasonable care to protect a child lawfully using the street from injury; a child playing on the sidewalk is lawfully using it and is entitled to the same protection as if he were using it for ordinary purposes of traffic.
“Where the owner knows, or may reasonably anticipate that children may play near his premises, he must exercise ■ that care which a reasonably prudent person would exercise under the same, or similar conditions or circumstances.” (Emphasis supplied.)
We submit that the refused special instructions either contain inaccurate statements of law, are worded too strongly *52 against the defendants, or that important elements of those refused instructions were included in the special instructions given to the jury.
The trial judge is not required to give a jury before argument an instruction which is not accurate or correct. 39 Ohio Jurisprudence, 1031, Section 313.
It is likewise well settled that “it is not prejudicial error to refuse special requests before argument, when the substance thereof has been embodied in other requests given before argument, at the instance of the same party.” Limbaugh v. Western Ohio Rd. Co., 94 Ohio St., 12, 113 N. E., 687.
Generally, instrumentalities or machines dangerous per se are those which in their very nature or design are calculated to do injury. Loop et al., Admrs., v. Litchfield, 42 N. Y., 351, 359, 1 Am. Rep., 543, 546. Surely, a stationary concrete mixer of standard construction in visible and audible operation, which is safe so long as one does not place any part of his anatomy inside it and thus come in contact with its moving parts, may not in and of itself be classed as a dangerous instrumentality or machine.
Lastly, it is claimed the trial court committed prejudicial error in making the following comment in the general charge:
“In the instructions I gave you before argument I dealt with a certain statute which you will remember having to do with obstruction of sidewalks and so on: and then informed you that a violation of that statute would amount to negligence, and I am certainly not taking any of that back. I merely say that you will consider all the circumstances of the case and then determine whether the standard of ordinary care which was complained of by the plaintiff in their conduct in the circumstances of their case, whether or not it came within the provisions of that statute. You will use this measuring stick and you will come to a final conclusion on this issue, this controverted question of fact of the defendants’ negligence.”
Conceding that the quoted portion of the charge is subject to criticism in that the latter part tended to modify and weaken the special charge referred to, is it of such a pernicious, misleading and confusing character as to warrant the setting aside of the jury’s verdict and the reversal of the trial court’s judg *53 mentí We do not think so. The court did tell the jury that the special instruction as given stood, and the jury had such special instruction before it in its deliberation. What was said afterward was inadvertent and misplaced, but it was not, upon a consideration of the entire record and an examination of the general charge as a whole, as grevious or consequential as either the Court of Appeals or the plaintiff regarded it. Western Ohio Ry. Co. v. Fairburn, Admr., 99 Ohio St., 141, 124 N. E., 131; Ochsner, Admr., v. Cincinnati Traction Co., supra; Youngstown Municipal Ry. Co. v. Mikula, a Minor, 131 Ohio St., 17, 1 N. E. (2d), 135.
Of course, every litigant is entitled to a fair and properly conducted trial, and serious errors committed during the progress of a trial should be noticed and acted upon by a reviewing court, but, where it is apparent that the errors complained of are not so flagrant or important as to have patently influenced the result of the trial, a reviewing court should be slow to interfere.
The writer of this opinion has read the entire bill of exceptions carefully at least twice. He has re-examined parts of it several times. He is convinced that the jury did not believe plaintiff’s story, that it found him sufficiently mature and intelligent to appreciate the dangers of a concrete mixer in operation, and that it came to the conclusion that any negligence which might be chargeable to defendants was not directly or actively responsible for plaintiff’s injury.
Accordingly, the judgment of the Court of Appeals is reversed and that of the Court of Common Pleas affirmed.

Judgment reversed.

Weygandt, C. J., Matthias, Hart, Stewart and Bell, JJ., concur.
Taft, J., concurs in paragraphs two, three and four of the syllabus and in the judgment.