## FEINSTEIN et al. v. DANIEL REEVES, Inc., et al.

District Court, S. D. New York.
March 2, 1936.

Otho S. Bowling, of New York City, for plaintiffs.

Herman Goldman, of New York City (Harry Liese, of New York City, of counsel), for defendant Daniel Reeves, Inc.

Lewis A. Ackley, of New York City (Arthur K. Wing, of New York City, of counsel), for defendant Swift & Co., Inc.

BRYANT, District Judge.

At the close of plaintiffs' case, with the consent of the attorney for plaintiffs, a motion for dismissal of the first cause of action of the plaintiff Edna Feinstein was granted.

At the close of the case, the motion made by the defendant Swift & Co., Inc., to dismiss the complaint as against it was granted.

At the close of the case, the defendant Daniel Reeves, Inc., moved for dismissal of the complaint and the direction of a verdict. Decision thereon was reserved. The case was submitted to the jury under stipulation by the parties that any judgment based on the verdict would be withheld until decision on the motions. The jury disagreed.

I grant the motion of defendant Daniel Reeves, Inc., and direct a verdict in favor of the defendant Daniel Reeves, Inc., and against the plaintiffs, with costs.

Plaintiff Sussler presented his case under two alleged causes of action. The first alleged cause was based upon an implied warranty by defendant Reeves, Inc., that the pork chops sold were wholesome and fit for human consumption. The evidence clearly shows that trichinæ infested pork is wholesome and fit for food when properly cooked. Pork chops are not sold to be eaten in the raw state. The warranty of wholesomeness is, not that the pork is free from trichinæ, but, rather, that it is fit for food when properly cooked. If I understand correctly the facts upon which the decision in Rinaldi v. Mohican Co.,

225 N.Y. 70, 121 N.E. 471, was based, then the above holding is not in conflict with that decision.

It is apparent that Sussler did not rely on any implied warranty of wholesomeness in the raw state, because he alleged the chops were thoroughly cooked. Having alleged the condition of the pork he ate, it was incumbent upon him to show that trichinæ infested pork, when thoroughly cooked, would cause trichinosis. The evidence conclusively shows the opposite.

The second alleged cause of action of each plaintiff, while sounded in negligence, is really based upon the Agriculture and Markets Law of the state of New York (Consol.Laws, c. 69). This law (section 198 et seq.) forbids the sale of adulterated foods, and the statute states that any food is adulterated which shall consist of any portion of a diseased animal or of an animal unfit for food. Plaintiffs contend that pork infested with live trichinæ is both "unfit for food" and the "product of a diseased animal" within the meaning of the law; and that any person selling the same for food, even in an uncooked state, is liable.

When this law was passed, the makers well knew that the parasite, trichina, was present in considerable percentage of otherwise healthy hogs; that its presence could not be detected by any known practical method of inspection; that pork so infected was wholesome when cooked; that the United States and state governments made no attempt to inspect for trichinæ and made no restriction against its sale for food when cooked. In view of these facts, I cannot hold that it is the intent of the statute to include hogs infected with trichinæ under the classifications "diseased animals" or "unfit for food."