Adams *v.* Scheib, Appellant.

Argued May 24, 1962. Before BELL, C. J., MUS-MANNO, JONES, COHEN, EAGEN and O'BRIEN, JJ.

reargument refused October 26, 1962.

*Huette F. Dowling,* with him *John C. Dowling, John H. Bream,* and *Dowling & Dowling,* for defendant, appellant.

*Bruce E. Cooper,* with him *Cooper and Woodside,* for plaintiffs, appellees.

*Martin H. Lock,* with him *William D. Boswell, James H. Thomas,* and *Compton, Handler, Berman & Boswell,* and *Hull, Leiby & Metzger,* for additional defendants, appellees.

OPINION BY MR. JUSTICE BENJAMIN R. JONES, September 25, 1962:

These two appeals[1] challenge the propriety of the action of the Court of Common Pleas of Dauphin Coun-

---

[1] In the court below there were six separate assumpsit actions which were consolidated for trial and six separate verdicts were rendered, all in favor of the original defendant. After the grant

ty in (1) granting new trials in each of six assumpsit actions after jury verdicts in favor of the original defendants in each action and (2) in refusing to take off compulsory nonsuits entered, during trial, in each of said actions in favor of the additional defendants and against the original defendant.

Dorothy Adams, George Adams, Raymond Shomper, Doris Neiter, Earl Neiter, Allen Hoke, Florence Daniels, Gerald Daniels and Harold Schreffler (plaintiffs) on or about October 4, 1958 purchased or caused to be purchased some raw pork sausage from Ernest Scheib (Scheib) who operates a grocery store and meat market in Lykens, Dauphin County. The plaintiffs, allegedly, ate portions of this sausage after it had been cooked and, shortly thereafter, became ill of trichinosis.[2]

of a new trial and the refusal to take off compulsory nonsuits against the original defendant in the court below, two appeals were taken—one from the grant of a new trial and the other from the refusal to take off the compulsory nonsuits—from the order of the court below filed to No. 943 September Term, 1959. Our decision will be binding in all six actions.

[2] Trichinosis is "a parasitic disease of mammals primarily" which is carried "to a large extent by hogs as the main reservoir of infection." Hogs normally become infected "by eating uncooked or raw garbage, or scraps, that is, garbage containing scraps of infected pork, infected with trichinae" which cause the hog "to develop ultimately trichinae cysts in the muscle tissue" and makes the hog capable of transmitting the disease to any animal, including man, which eats the flesh of the hog. Trichinae can infest only a live hog. If infected pork is eaten by man, the tiny larvae imbedded in the hog's muscle tissue are released into the stomach and intestines of the man; within a short time the larvae copulates, the male eventually disintegrating with the intestinal contents and the female imbedding herself in the inner intestine. Within a short time the female liberates in large numbers small larvae which eventually get into the arterial system from which they are distributed throughout the entire system of the man. The result is trichinosis, an illness most serious and in some instances fatal. Summary of testimony of Dr. E. J. Witte.

On or about November 9, 1959, each plaintiff filed a separate action of assumpsit, based on a breach of an implied warranty, against Scheib, the seller of the sausage, in the Court of Common Pleas of Dauphin County. Except as to the damages claimed, each complaint similarly averred that plaintiffs, relying upon an implied warranty by Scheib that meat and meat products sold by him were wholesome and fit for human consumption, on or about October 4, 1958 purchased raw pork sausage from Scheib; that plaintiffs ate a portion of the sausage so purchased and became ill of trichinosis; that the sausage was not wholesome and fit for human consumption but contained animal parasites known as trichinella spiralis or trichinae; that Scheib breached his implied warranty; that plaintiffs became ill and suffered damage; that notice of the breach of such warranty was duly given Scheib.

On January 9, 1960, Scheib filed complaints to join as additional defendants in the actions Herman Hervitz and Rose Kahn, t/a Hervitz Packing Company, Hollinger's Meat Products, Inc., Kessler's Inc., and Shamokin Packing Company, Inc. (additional defendants). In these complaints Scheib averred that the additional defendants were engaged in the wholesome meat packing business; that they offered for sale and did sell to retailers, including Scheib, meat and meat products and did warrant to said retailers, including Scheib, that meat and meat products sold by them were wholesome and fit for human consumption; that they knew the meat and meat products sold to Scheib were for resale to the public, including plaintiffs, and they did warrant to said ultimate consumers that the meat and meat products were wholesome and fit for human consumption; that Scheib purchased from them meat and meat products from which he made sausage; that the additional defendants breached their warranties not only to Scheib but also to the ultimate consumers in

the sale of meat and meat products unfit for human consumption which resulted in illness to the ultimate consumers, including plaintiffs.

Scheib's preliminary objections to plaintiffs' complaints and the additional defendants' preliminary objections to Scheib's complaints were dismissed and, thereupon, answers were filed. Consolidated, all six actions were tried before Judge CARL B. SHELLEY and a jury and the jury returned verdicts against plaintiffs and in favor of Scheib. During the trial, when Scheib had concluded his evidence, the additional defendants moved for and were granted compulsory nonsuits.[3]

Plaintiffs filed motions for a new trial and Scheib filed motions to take off the compulsory nonsuit. By a 2-1 decision,[4] the court en banc of Dauphin County granted plaintiffs' motions for a new trial and refused to take off the compulsory nonsuits. From that action of the court below Scheib took these two appeals.

In passing upon the propriety of the action of the court below in granting a new trial we are guided by that which this Court stated in *Keefer v. Byers,* 398 Pa. 447, 449, 159 A. 2d 477: "Ordinarily, upon an appeal from the grant of a new trial, the appellant has the very heavy burden of endeavoring to establish that the action of the court below in such regard constituted a clear and palpable abuse of discretion: [citing cases]. However, where it clearly appears, either by certificate of the trial court or in its opinion on the new trial mo-

---

[3] The compulsory nonsuits were granted because Scheib failed to prove with any degree of certainty that the pork from which the infected sausage was made was pork which had been purchased from the additional defendants, or any of them.

[4] The majority opinion was written by Judge SHELLEY and the minority opinion was written by Judge KREIDER. The latter opinion addressed itself solely to the motions for a new trial and did not consider the propriety of the entry of the compulsory nonsuits.

tion, that, except for the reason relied upon by the court for granting a new trial, judgment would have been entered on the verdict, the action of the lower court becomes reviewable, not for an abuse of discretion, but for the legal merit of the sole and exclusive reason assigned for the granting of the new trial: [citing a case] . . . . We therefore have for review the merit, as a matter of law, of the reason assigned by the court below for its action."[5]

Plaintiffs assigned four reasons for a new trial.[6] The majority opinion in the court below stated: "Since we are granting a new trial *because the verdict was against the charge of the Court,* we need not pass on the other three reasons . . . ." (Emphasis supplied). From an examination of that opinion it is clear beyond question that the *sole* and *exclusive* reason for the grant of new trials was that the verdicts were against the charge of the court.[7] In that posture of this litigation we direct our inquiry to the merit of the sole reason assigned for the grant of a new trial; whether the verdicts were against the charge of the court?

The majority of the court below believed that the jury verdicts were contrary to the following portions of the trial judge's instructions to the jury: "You must determine from the evidence did the six plaintiffs, . . ., or either or any of them, suffer from trichinosis? If they didn't, then that is the end of the case and there

---

[5] Except, for instance, where the reason assigned is the excessiveness or inadequacy of the verdict, in which event we review to determine whether the lower court has abused its discretion or committed an error of law: *Ischo v. Bailey*, 403 Pa. 281, 290, 169 A. 2d 38.

[6] These reasons were that the verdicts were against (a) the evidence, (b) the weight of the evidence, (c) the law and (d) the charge of the court.

[7] In view of this fact, the line of cases represented by *Marko v. Mendelowski*, 313 Pa. 46, 47, 169 A. 99, relied upon by plaintiffs, is inapposite.

would be no breach of warranty? Did the defendant breach his warranty? Did he sell to the plaintiffs infected pork sausage? If he did, he breached his warranty and the plaintiffs would be entitled to recover."[8] At the completion of the charge, plaintiffs requested and the trial judge charged on the following points: "1. The general rule is that where the sale of articles of food is for immediate consumption, there is an implied warranty that the food is wholesome and fit for the purpose intended, irrespective of the seller's knowledge of disease or defects therein. . . . 2. If you find that the defendant Scheib sold pork sausage to the plaintiffs, and that it was unwholesome or diseased, then absolute liability is cast upon the defendant as seller of the unwholesome or diseased pork sausage, without regard to his knowledge of its presence. . . . 3. If the pork sausage sold by defendant Scheib to the plaintiffs was infected with trichinae and caused the injuries suffered by the plaintiffs, then a prima facie case has been made out by the plaintiffs. . . . 4. Where a consumer orders from retail dealers with whom he has dealt for a number of years a quantity of pork sausage which the retail dealer or his representatives selects for the customer, the retail dealer is not excused from liability, even if he did not know of the presence of the trichinae in the meat which he sold."[9]

As we shall demonstrate, infra, points 2 and 3 as charged by the court are not only conflicting but under the factual situation in the case at bar clearly errone-

---

[8] Under this *portion of the charge*, three questions were presented to the jury: (a) was there a sale of the sausage; (b) was the sausage infected; (c) did trichinosis result? Under the court's theory, an affirmative answer to all three questions would, *under this portion of the charge*, entitle plaintiffs to recover. As we shall demonstrate, infra, this was clearly erroneous.

[9] Point 2 would impose absolute liability; Point 3 on the same findings would indicate a prima facie case had been made out.

ous. They state in effect that, once the plaintiffs established the sale of pork sausage by Scheib[10] *and* that such sausage was unwholesome or diseased,[11] then, regardless of any scienter on the part of Scheib, either absolute liability would follow or a prima facie case would have been made out. Had these been the only issues in the case, under the authorities, such instructions, even though erroneous would have had to be followed[12] and a verdict contrary to such instructions would have to be set aside. However, the record clearly reveals that these were not the *only issues* in the case at bar as the trial judge so recognized in his charge and throughout the trial of the cause.

An examination of the record as it reflects the testimony received in evidence by the trial judge and of the charge of the court *in its entirety,* rather than by exclusive reference to the several portions of the charge emphasized in the majority opinion in the court below, clearly indicates that the jury could have found that the sale of the raw pork sausage took place, that at the time the sausage was infested with trichinae and that plaintiffs suffered trichinosis from eating the sausage and, despite such findings, properly return verdicts in favor of Scheib.

At the trial *plaintiffs* undertook to prove the sequence of events which transpired from the time the

---

[10] Concededly, plaintiffs did purchase or cause to be purchased on or about October 4, 1958 *some* raw pork sausage from Scheib.

[11] While there was no concession on this point, there was evidence from which the jury could have found, *if it believed such evidence,* that plaintiffs had eaten the pork sausage purchased from Scheib and sometime later became ill. There was also evidence that, in some instances, other members of some of plaintiffs' families had eaten the same sausage and had not become ill.

[12] *Fleming v. Marine Insurance Co.,* 3 Watts & S. 144, 38 Am. Dec. 747; *Jones v. Pennsylvania R. Co.,* 289 Pa. 424, 137 A. 796; 39 Am. Jur., New Trial, §127, p. 136; 66 C.J.S. New Trial §68, pp. 201, 202.

raw pork sausage was purchased until the plaintiffs became ill. They very properly presented evidence which (a) described how the raw pork sausage was protected from spoilage from the time it was purchased until it was cooked; (b) portrayed in detail how in each instance the sausage was prepared and cooked; (c) sought to eliminate other pork or pork products as the source of plaintiffs' illness by showing that the several plaintiffs had not eaten any pork or pork products other than the raw pork sausage purchased from Scheib. Such evidence was most relevant and material and the trial judge recognized such relevancy or materiality otherwise he would not have admitted it. The probability or improbability of such evidence and the credibility thereof were questions within the province of the jury and the court in its charge recognized that it was for the jury to determine the credibility of this testimony. Moreover, it was for the jury, as the court charged it, to determine whether plaintiffs did in fact rely upon the implied warranty that the raw pork sausage was fit for human consumption and whether the sausage was in fact unwholesome and unfit for human consumption. If, as the majority in the court below now opines, the only relevant and material issues before the jury were whether the sale of the sausage had taken place, whether the sausage was infected with trichinae and whether, from eating the sausage, plaintiffs became ill, why did the trial court admit into the record the testimony as to the other issues? The theory of the majority of the court below *after trial* was in direct conflict with the theory upon which the plaintiffs proceeded and upon which the trial judge acted *during trial*.

The fundamental error in the entire proceeding arises from a misapprehension in the court below of the nature and the extent of the warranty implied in law which arises from the sale of raw pork sausage.

Acting under this misapprehension, the trial court placed Scheib at a distinct disadvantage and gave to plaintiffs an advantage which the law does not justify.

Three propositions are self-evident: (1) that Scheib sold raw pork sausage to plaintiffs; (2) that coincident with that sale an implied warranty arose;[13] (3) of such warranty the plaintiffs were beneficiaries.[14] What was the nature and extent of that implied warranty? Plaintiffs and the majority of the court below take the position that Scheib, the seller, impliedly warranted to plaintiffs that the raw pork sausage was wholesome and fit for human consumption *in the raw or uncooked state*. Scheib takes the position that he impliedly warranted to plaintiffs that the raw pork sausage was wholesome and fit for human consumption *only if properly prepared and cooked*.

In construing the nature and extent of the warranty we must bear in mind that the subject matter of the sale was raw pork sausage which is a product which the seller does not ordinarily intend and is not required to foresee will be eaten in a raw or uncooked state and which the buyer ordinarily buys to eat cooked, not raw.[15] It is common knowledge that the ingestion of raw pork or raw pork products is fraught with great danger and that proper cooking of raw pork products will ordinarily destroy the trichinae and render the

---

[13] Uniform Commercial Code, Act of April 6, 1953, as amended, §§2-314, 2-315, 12A P.S. §§2-314, 2-315.

[14] Ibid, §2-318, 12A P.S. §2-318.

[15] There are processed pork products, such as salami, boloney, etc., which are intended to be eaten without cooking. Such products are vastly different from raw pork sausage, hence the rule of law applicable to such products and warranty involved is different: *Vaccarezza v. Sanguinetti*, 71 Cal. App. 2d 687, 163 P. 2d 470; *Catalanello v. Cudahy Packing Co.*, 27 N.Y.S. 2d 637, aff'd 264 App. Div. 723, 34 N.Y.S. 2d 37; *Baum v. Murray*, 23 Wash. 2d 890, 162 P. 2d 801.

pork fit for human consumption.[16] Furthermore, there is no practical method of examination of raw pork to ascertain whether such pork is trichinae infested and thereafter unfit for use.[17]

In this Commonwealth the question of the nature and extent of the warranty implied in law arising from the sale of raw pork sausage is one of first impression. Other jurisdictions have been confronted with the question and have concluded that the warranty which arises from the sale of raw pork or raw pork products is a warranty that said pork or pork product is wholesome and fit for human consumption *only if it is properly cooked*: Zorger v. Hillman's, supra; Feinstein v. Daniel Reeves, Inc., 14 F. Supp. 167; Silverman v. Swift & Co., supra; Meyer v. Greenwood, 125 Ind. App. 288, 124 N. E. 2d 870; Arena v. J. P. Squire Co., 321 Mass. 423, 73 N.E. 2d 836; Holt v. Mann, 294 Mass. 21, 200 N.E. 403; Vaccarino v. Cozzubo, 181 Md. 614, 31 A. 2d 316; Nicketta v. National Tea Co., supra; Cheli v. Cudahy Bros. Co., supra. This is a sound and practical rule, a rule which recognizes that neither the seller nor the buyer intends that raw pork and raw pork products be eaten in a raw or uncooked state but only after such products are cooked. The question of whether raw pork or raw pork products has been properly cooked is a question of fact, one for determination by a jury: Meyer v. Greenwood, supra; Arena v. J. P. Squire Co., supra; Holt v. Mann, supra (Cf.: Nicketta v. National Tea Co., supra.)

In the case at bar, inferentially at least, plaintiffs recognized that they had to prove not only the sale of

---

[16] In the case at bar there was testimony that pork cooked thoroughly for one hour at 137° Fahrenheit will ordinarily be free of active trichinae and fit for human consumption.

[17] *Silverman v. Swift & Co.*, 141 Conn. 450, 107 A. 2d 277; *Nicketta v. National Tea Co.*, 338 Ill. App. 159, 87 N.E. 2d 30; *Zorger v. Hillman's*, 287 Ill. App. 357, 4 N.E. 2d 900; *Cheli v. Cudahy Bros. Co.*, 267 Mich. 690, 255 N.W. 414.

the raw pork sausage and that, from eating such sausage, they became ill of trichinosis but also the manner and method of cooking for they presented, in each instance, testimony as to how the sausage was prepared and cooked. Unfortunately the trial judge misconstrued the nature and extent of the warranty as is evident from an examination of the record. Scheib requested the court to charge that Scheib "warranted only that the pork sausage was wholesome and fit if properly cooked" and the court refused to do so. Again, Scheib's counsel called the trial judge's attention to the fact that his charge had not covered the fact that the warranty was conditioned on a proper cooking of the sausage and the trial judge replied: "We say we didn't discuss it because it wasn't proper". As a result of this misapprehension on the part of the trial judge, the plaintiffs were given a great advantage and Scheib seriously disadvantaged. Of that, however, plaintiffs are in no position to make complaint.

Under the rationale of the majority of the court below Scheib was liable as a matter of law and no verdict for Scheib could possibly stand. The liability of Scheib depended on various issues of fact which were before this jury and which the jury must have considered in arriving at its verdict. We see no merit in the position of the majority of the court below that the jury either ignored and acted contrary to the instructions of the trial judge if such instructions are examined in their entirety. The mistake that was made was in a faulty interpretation of the nature and extent of the warranty involved and such mistake worked to the benefit not to the disadvantage of the plaintiffs and they secured much better treatment at the hands of the trial court than they deserved under the law. They stand in no position now to complain. We agree with Judge KREIDER's statement in his dissenting opinion: "To grant a new trial under the circumstances here pres-

464

ent, in my judgment would strip from the jury its constitutional right to act as the trier of the facts and pass upon the issues presented to them by the Court with the approval of plaintiffs' counsel."

Scheib has also appealed from the refusal of the court below to take off the compulsory nonsuits entered in favor of the additional defendants. In view of the conclusion we have reached as to the grant of a new trial, the question raised as to the compulsory nonsuits need not be considered.

Order reversed, with direction to enter judgments on the verdicts in favor of Scheib and against plaintiffs.[18]

Mr. Justice MUSMANNO dissents.

[18] The court below did not pass on the three additional reasons for a new trial advanced by plaintiffs, i.e., that the verdicts were against the evidence, the weight of the evidence and the law. In the interests of expediting this matter we have, in examining the record, weighed these reasons and find them without merit: accordingly, no useful purpose can be served in remanding to the court below for this purpose.