Clouser, Appellant, *v.* Shamokin Packing Company et al.

Argued December 9, 1975. Before WATKINS, P. J., JACOBS, HOFFMAN, CERCONE, PRICE, VAN DER VOORT, and SPAETH, JJ.

*Lester L. Greevy, Jr.*, with him *Greevy & Mitchell,* for appellant.

*Allen E. Ertel,* submitted a brief for appellee, Shamokin Packing Company.

*John H. Humphrey,* with him *Candor, Youngman, Gibson & Gault,* for appellee, Milton Provision Company.

No appearance entered nor brief submitted for appellee, John Pacento t/d/b/a Diz's Restaurant.

OPINION BY HOFFMAN, J., March 29, 1976:

Appellant contends that the trial court, in passing upon appellees' preliminary objections, improperly took judicial notice of the facts that a food processor cannot detect trichinae in raw pork, and that proper cooking of pork will destroy trichinae and render the meat fit for human consumption.

On September 7, 1974, appellant ordered a sausage breakfast at Diz's restaurant in Berwick, Pennsylvania. On November 19, 1974, appellant filed a complaint which alleged that she contracted trichinosis as a result of consuming the sausage at that restaurant. John Pacento, the owner of the restaurant, Milton Provision Company, the restaurant's supplier, and Shamokin Packing Company, the packer of the sausage, were all named as defendants. In her complaint, appellant asserted three theories of recovery against all defendants: negligence in failing adequately to inspect the raw pork; breach of implied warranty that the pork was merchantable and fit for human consumption; absolute liability for selling a product in a defective condition. In addition, the complaint alleged that John Pacento was negligent for failing to properly cook the pork.[1]

---

1. In her complaint, appellant cites the statute which makes it unlawful to sell any article of food which is adulterated. See 31 P.S. §1 et seq., May 13, 1909, P.L. 520, §1; June 1, 1937, P.L. 1127, §1. The statute, however, is entirely criminal and does not provide a private right of action for its violation. It does not, in and of itself, state a separate cause of action.

On January 31, 1975, Milton Provision Company and Shamokin Packing Company, filed preliminary objections in the nature of a demurrer, see Rule 1017(b)(4), Pa.R.C.P., which were sustained by the court on June 30, 1975, with leave to appellant to file additional pleadings. Appellant, however, filed the instant appeal.

The lower court relied almost entirely on a single Supreme Court decision in holding that as a matter of law, distributors of pork are not liable to an individual who contracts trichinosis. See *Adams v. Scheib*, 408 Pa. 452, 184 A.2d 700 (1962). In *Adams*, the plaintiffs purchased raw pork from defendant's grocery store, cooked the meat, and contracted trichinosis after eating it. The complaint alleged that defendant breached his implied warranty that the meat products he sold were fit for human consumption. The jury returned a verdict in favor of defendant, but the court *en banc* reversed and ordered a new trial. The Supreme Court reversed and reinstated the jury verdict:

"Three propositions are self-evident: (1) that Scheib sold raw pork sausage to plaintiffs; (2) that coincident with that sale an implied warranty arose; (3) of such warranty the plaintiffs were beneficiaries. What was the nature and extent of that implied warranty? Plaintiffs and the majority of the court below take the position that Scheib, the seller, impliedly warranted to plaintiffs that the raw pork sausage was wholesome and fit for human consumption *in the raw or uncooked state.* Scheib takes the position that he impliedly warranted to plaintiffs that the raw pork sausage was wholesome and fit for human consumption *only if properly prepared and cooked.* [Emphasis in original]

"In construing the nature and extent of the warranty we must bear in mind that the subject matter of the sale was raw pork sausage which is a product which the seller does not ordinarily intend and is not required to foresee will be eaten in a raw or uncooked state and which the buyer ordinarily buys to eat cooked, not raw.

*It is common knowledge* that the ingestion of raw pork or raw pork products is fraught with great danger and *that proper cooking of raw pork products will ordinarily destroy the trichinae and render the pork fit for human consumption. Furthermore, there is no practical method of examination of raw pork to ascertain whether such pork is trichinae infested and thereafter unfit for use.*" 408 Pa. at 461-462, 184 A. 2d at 705. (Emphasis added). The Court held, therefore, that a seller of raw pork warrants only that the product will be safe if properly cooked.

In the instant case, the lower court took judicial notice of the two facts which form the basis of the limited warranty announced in *Adams:* that proper cooking will destroy trichinae and that a seller of raw pork cannot practically determine whether the raw pork is infested.[2] The court, therefore, dismissed the implied warranty claim as a matter of law because the sausage had been cooked, whether properly or improperly, by Diz's Restaurant. The court also dismissed the claims of common law negligence and absolute liability as inconsistent with the holdings of *Adams v. Scheib.*

Our Supreme Court has stated that "courts can take judicial notice of scientific and medical facts which are generally known ..." *Hoffman v. Misericordia Hospital of Philadelphia,* 439 Pa. 501, 508, n. 12, 267 A. 2d 867, 870-1, n.12 (1970), citing *Adams v. Scheib,* supra; and *Moffett v. Harbison-Walker Co.,* 339 Pa. 112, 14 A. 2d 111 (1940).[3] Appellant does not question this proposition.

---

2. The court also relied on decisions from other jurisdictions which reach the same result as *Adams. Kobeckis v. Budzko,* 225 A. 2d 418 (Me. 1967); *Silverman v. Swift & Co.,* 107 A. 2d 277 (Conn. 1954); *Nicketta v. National Tea Co.,* 87 N.E. 2d 30 (Ill. 1949).

3. Professor McCormick would adopt a more expansive view of judicial notice of scientific facts: "Thus it is that while the various propositions of science are a suitable topic of judicial notice, the content of what will actually be noticed is subject to change as the tenets of science evolve. It is manifest, moreover, that the principle involved need not be commonly known in order to be judicially noticed; it

Rather, appellant contends that at the demurrer stage, the use of judicial notice should be limited. The lower court apparently recognized the validity of appellant's argument because it granted appellant twenty days in which to present an amended complaint "alleging any scientific developments since the Supreme Court decision in *Adams v. Scheib* which would significantly enhance the ability of a processor/distributor of raw pork to detect or effectively destroy trichinae in the product."

A major difficulty with the lower court's ruling stems from the procedural posture of the case. In ruling upon a demurrer, the issue for the court is whether the complaint states a cause of action. "In determining whether a demurrer should be sustained and the complaint dismissed the question presented is whether, on the facts averred, the law says with certainty that no recovery is possible: *King v. U.S. Steel Corp.*, 432 Pa. 140, 247 A. 2d 563 (1968); *Sun Ray Drug Co. v. Lawler*, 366 Pa. 571, 79 A. 2d 262 (1951). In considering the demurrer, every well-pleaded material fact set forth in the complaint, as well as all inferences reasonably deducible therefrom, must be taken to be admitted: *Yania v. Bigan*, 397 Pa. 316, 155 A. 2d 343 (1959); *Mistick v. Cammack*, 397 Pa. 296, 154 A. 2d 588 (1959). A demurrer does not, however, admit the pleader's

suffices if the principle is accepted as a valid one in the appropriate scientific community. In determining the intellectual viability of the proposition, of course, the judge is free to consult any sources that he thinks are reliable, but the extent to which judges are willing to take the initiative in looking up the authoritative sources will usually be limited. By and large, therefore, it is the task of counsel to find and to present in argument and briefs such references, excerpts, and explanations as will convince the judge that the fact is certain and demonstrable." McCormick, *Evidence* (E. Cleary ed. 1972), §330 at 764. In the instant case, appellees did present authority which supported the two propositions they requested the court to judicially notice. The court's decision, however, was erroneous for the two reasons discussed *infra*, even under the broader doctrine espoused by Professor McCormick.

conclusions of law: *Eden Roc Country Club v. Mullhauser,* 416 Pa. 61, 204 A. 2d 465 (1964); *Lerman v. Rudolph,* 413 Pa. 555, 198 A. 2d 532 (1964). Of course, where the complaint shows on its face that the claim is devoid of merit, the demurrer should be sustained: *Greenberg v. Aetna Insurance Co.,* 427 Pa. 511, 235 A. 2d 576 (1967), *cert. denied,* 392 U.S. 907, 88 S. Ct. 2063 (1968). But if there is any doubt as to whether the demurrer should be sustained, such doubt should be resolved in favor of refusing to enter it: *Sun Ray Drug Co. v. Lawler,* supra; *Moran v. Blair,* 304 Pa. 471, 156 A. 81 (1931)." *Hoffman v. Misericordia Hospital of Philadelphia,* supra at 503-504, 267 A. 2d at 868. A preliminary objection in the nature of a demurrer is identical to a motion for judgment on the pleadings pursuant to Rule 1034, Pa.R.C.P., and is governed by identical standards. *Engel v. Parkway Company,* 439 Pa. 559, 266 A. 2d 685 (1970). *Enoch v. Food Fair Stores, Inc.,* 232 Pa. Superior Ct. 1, 331 A. 2d 912 (1974).

If the question of the ability of a seller of pork to detect trichinae were not decided by the court in favor of appellees, appellant's complaint would state a cause of action in both negligence and warranty. The complaint averred that appellees were negligent in failing adequately to inspect the meat they processed and sold to the restaurant. If appellant can prove that a feasible inspection procedure exists, his claim would be meritorious. Similarly, appellant states a cause of action for breach of implied warranty. Normally, non-detection is irrelevant in a warranty case. For example, in *Vlases v. Montgomery Ward & Company,* 377 F.2d 846 (3d Cir. 1967), plaintiff purchased 2,000 one-day-old chicks from defendant. Subsequently, it was determined that the chicks had visceral and ocular leukosis. Despite the fact that expert testimony on both sides indicated "that there was no way of determining whether newly-hatched chicks have leukosis and that there is no medication available to prevent the disease from occurring ......," 377

F.2d at 849, the Court upheld the District Court's charge that if the jury found that the chicks were diseased when delivered they should find for the plaintiff. The Court distinguished *Adams v. Scheib*, supra, because the seller of pork expects that his product will be cooked, and proper cooking will destroy the infestation. It must be remembered, however, that non-detection was one of the factors which led the *Adams* Court to conclude that a seller of raw pork warrants only that the product is safe if properly cooked. Were it possible for a packer to detect trichinae and take feasible measures to remove the disease, the Supreme Court might very well reconsider *Adams* and place a more extensive implied warranty on the seller.

On the face of the complaint, therefore, appellant stated a cause of action against appellees, and the demurrer should have been denied. The court, however, adopted the facts judicially noticed in *Adams* and held that appellant could not recover as a matter of law. Although there does not seem to be any reason entirely to preclude a judge from taking judicial notice at the demurrer stage, the use of the doctrine should be severely limited: "In ruling on a demurrer, the judge must decide whether the complaint itself states a cause of action .... It has been argued, therefore, that judicial notice cannot be applied to the construction of a pleading and that, in ruling upon a demurrer, while the court must take as true every fact well pleaded, it must assume no others. This broad contention has been rejected as a basis for completely prohibiting the use of judicial notice in ruling upon a demurrer .... However, in light of the judge's limited function in ruling on a demurrer, there appears to be cogent reasons for urging a very limited use of judicial notice in this area. A court, in ruling on a demurrer, should refrain from noticing any fact which is not literally indisputable and which the parties could not reasonably raise in further pleadings or on argument at trial." Comment, *The Presently Expand-*

*ing Concept of Judicial Notice,* 13 Vill.L.Rev. 528, 536-537 (1968). Under this test, the fact that cooking will generally kill trichinae may be properly noticed, but the fact of non-detection may not. The court below, recognizing that appellant might be able to dispute this fact, granted appellant twenty days in which to specifically *plead* new developments which might enable a processor to detect trichinae in raw pork. In effect, therefore, the court asked appellant to plead evidence in support of its negligence and warranty claims. At the demurrer stage, however, the motion should be denied when the plaintiff states a cause of action. Appellant's complaint is sufficient to withstand a demurrer without additional evidence to support her contentions. In passing on a demurrer, it is procedurally improper for a court to request additional pleadings.

Nevertheless, were it entirely clear that appellant could not recover against appellees, we would be inclined to sustain the order of the lower court, even though it was entered pursuant to an erroneous motion. For example, in *Enoch v. Food Fair Stores, Inc., supra,* plaintiffs filed a complaint in trespass against four defendants for injuries arising out of an automobile accident which occurred on the Walt Whitman Bridge in Philadelphia. One of the defendants joined the Delaware River Port Authority as an additional defendant. In new matter, the Authority raised the affirmative defense of sovereign immunity. The plaintiffs did not file a responsive pleading, and the Authority filed a Motion for Judgment on the Pleadings pursuant to Rule 1034, Pa.R.C.P. Although we stated that the court erred in holding that plaintiffs admitted the defense of sovereign immunity by failing to respond, we sustained the order of the lower court because it was clear, as a matter of law, that the Authority was entitled to sovereign immunity. In the instant case, the merits are not so free from doubt that we should adopt an approach similar to *Enoch.*

In *Hoffman v. Misericordia Hospital of Philadelphia, supra*, one of the issues was virtually identical to the question of detection present in the instant case. There, plaintiff's decedent contracted hepatitis after receiving a transfusion of whole blood which contained hepatitis virus. The lower court sustained the hospital's demurrer, primarily on the theory that the transfusion was a service, and not a sale, and, therefore, no implied warranties attached to the benefit of the patient. The Supreme Court reversed, holding that an implied warranty could be recognized in a non-sale transaction. In addition, the Court addressed in a footnote the precise issue raised by appellant in this case: "The lower court, in a sense, took judicial notice of the fact that it is impossible to detect the presence of hepatitus [sic] virus in whole blood provided for transfusions, relying on information contained in opinions of other courts therefor. Although courts can take judicial notice of scientific and medical facts which are generally known ..., because of the importance of this fact to this litigation, the rapidity with which medical technology develops and the time lapse since the decisions relied upon by the lower court, we would prefer to leave open for trial, where a complete record could be developed, whether or not whole blood used in transfusions is unavoidably unsafe...." 439 Pa. at 508, n. 12, 267 A. 2d at 870, n.12 (citations omitted). The identical considerations are present in the instant case: if non-detection is judicially noticed, appellant cannot recover against the appellees; thirteen years have elapsed since *Adams v. Scheib* was decided; and technology develops no less rapidly today than it did in 1970, when *Hoffman* was decided. The latter fact was implicitly recognized by the lower court, because its opinion contains extensive quotations from *Kobeckis v. Budzko, supra*, a 1967 Maine decision which indicated that certain freezing procedures will kill trichinae, but that the cost, at that time, was prohibitive. It is certainly possible that in the past eight

years technology has advanced to the stage where a freezing procedure, or some other method to destroy trichinae, is economically feasible. Although the lower court did give appellant an opportunity to plead specifically any such development, this crucial issue should not be decided on the basis of the pleadings alone.

Order reversed. Appellant's complaint against the appellees is reinstated.

VAN DER VOORT, J., concurs in the result.