# University of Pittsburgh v. Equitable Gas Company

*Stewart M. Flam,* for plaintiff.
*William R. Tighe,* for defendant.

FINKELHOR, *J.,* March 8, 1978 — This matter comes before the court on preliminary objections in the nature of a demurrer to two counts of plaintiff's complaint, a motion to strike various paragraphs or portions of paragraphs of plaintiff's complaint, and a motion for more specific pleading filed by de-

fendant, Equitable Gas Company (Equitable). On November 9, 1977, plaintiff, University of Pittsburgh of Commonwealth System of Higher Education (University), filed this action against Equitable to recover direct and consequential damages resulting from a natural gas explosion which occurred on January 20, 1977, within or beneath premises, leased or possessed by plaintiff, and known as Langley Hall. The gas, which collected under the University-occupied structures, leaked from the main line distribution system of defendant. Defendant's preliminary objections were filed November 28, 1977, and oral argument was heard January 11, 1978.

Plaintiff's complaint consists of three separate counts: *count 1* in trespass for negligence; *count 2* in assumpsit for breach of implied warranty; and *count 3* in trespass for strict liability under the Restatement, 2d, Torts, §402A. It is defendant's position that neither the Uniform Commercial Code nor strict liability govern the sale of natural gas through a pipe distribution system.

In ruling on preliminary objections in the nature of a demurrer, the court is confined to the facts of the pleadings to which the demurrer was filed, and must accept as true all well-pleaded, material facts and the inferences reasonably deducible therefrom. A demurrer can only be sustained where it appears with certainty that plaintiff has failed to state a cause of action, and any doubts must be resolved in plaintiff's favor: Firing v. Kephart, 466 Pa. 560, 353 A. 2d 833 (1976); Bear v. Reformed Mennonite Church, 462 Pa. 330, 341 A. 2d 105 (1975); Clouser v. Shamokin Packing Co., 240 Pa. Superior Ct. 268, 361 A. 2d 836 (1976).

The averments of the complaint are briefly as follows:

Defendant is a seller and/or distributor of natural gas and provides plaintiff University with gas service to the Langley-Clapp-Crawford Hall buildings[1] in the Oakland area of the City of Pittsburgh. These structures are bounded by Fifth, Tennyson, Ruskin and Bigelow and defendant utility maintains pipelines on these streets. The leak, which occurred from pipelines located along Tennyson Avenue, traveled through an old grill work, no longer in use, and eventually accumulated under the Langley Hall structure. No customers were serviced from the offending pipeline and plaintiff does not allege the particular pipe which actually provided service to the University structures. Plaintiff further avers that the leaking or escaping gas lacked the additives which provide odor to natural gas and, therefore, was not easily detectable.

Under count 2, plaintiff alleges that defendant Equitable "impliedly and expressly warranted that gas would be transmitted to plaintiff in a safe manner by way of an underground pipeline system" owned, operated, inspected and maintained by defendant[2] and that defendant would use "due care in the control and management of its entire pipeline system." It is further stated that plaintiff relied upon these warranties in renewing its month-to-month service agreement with defendant and that these warranties were breached by defendant's failure to adequately inspect and maintain its pipeline system and by defendant's failure to

---

1. Plaintiff does not allege the owner of the realty or the legal relationship with said owner.

2. Paragraph 14 of the complaint inadvertently confuses the designation plaintiff and defendant. The court assumes this is a typographical error.

odorize the natural gas in its pipes to facilitate detection in the event of a leak.

In count 3 under section 402A of the Restatement, 2d, Torts, plaintiff alleges that the above-described pipeline is an inherent part of the end product sold to plaintiff, and that, due to the leakage of the pipeline and the lack of additives to odorize the gas, the pipeline and/or gas were defective and unreasonably dangerous for normal use.

The issues underlying defendant's demurrer are (1) whether the furnishing of natural gas via a pipeline distribution system is a "sale of goods" under the Uniform Commercial Code of April 6, 1953, P.L. 3, as amended, 12A P.S. §2-101 et seq.; and (2) whether a defect within the gas distribution system is a defect of the product.

It is defendant's position that the transmission of natural gas through an underground pipeline system is not a sale of "goods" under UCC sections 2-102, 2-105, and that to the extent that plaintiff's complaint in trespass is based on a defect in an underground main pipe, it does not state a section 402A claim since it is not the pipe, but rather the gas, which is delivered to the consumer. Defendant further argues that there was no sale of gas from the pipelines involved to plaintiff which would trigger either article 2 of the UCC or section 402A of the Restatement. Basically, defendant argues that there must be a *sale* of goods to support an action based upon breach of warranty in contract or strict liability in tort.

It is plaintiff's position that the flow of gas through pipelines controlled by defendant is an essential aspect of the ultimate sale, and that the sale of gas is not a single event, but entails a continuum of sales-service transactions.

The warranties relating to utility service, i.e., gas, electricity, water, etc., are not clearly defined and the expansion of the scope of section 402A and breach of warranty to remove both horizontal and vertical privity, in Pennsylvania, raises new legal questions: Salvador v. Atlantic Steel Boiler Co., 457 Pa. 24, 319 A. 2d 903 (1974). In addition, the traditional "sale" concept under the Commercial Code has recently been expanded, in Pennsylvania, to include not only an actual sale but bailments and leases: Nath v. National Equipment Leasing Corp., 473 Pa. 178, 373 A. 2d 1105 (1977); Francioni v. Gibsonia Truck Corp., 472 Pa. 362, 372 A. 2d 736 (1977); Berkebile v. Brantly Helicopter Corp., 462 Pa. 83, 337 A. 2d 893, 898, fn. 3 (1975).

Thus, the question before the court is whether a supplier of natural gas sells a product or a service and whether a warranty exists, not only to supply a non-defective product but the responsibility to maintain a non-defective system for the delivery of the product. As early as *Hoffman v. Misericordia Hospital of Philadelphia,* 439 Pa. 501, 267 A. 2d 867 (1970), the Pennsylvania Supreme Court reversed the grant of a demurrer based upon the dichotomy between sales and service. The appellate court noted that UCC §2-313 was not designed to curb or disturb lines of case law which have recognized that warranties need not be confined either to sales contracts or to the direct parties to such a contract.

The court stated as follows:

"We therefore do not feel obligated to hinge any resolution of the very important issue here raised on the technical existence of a sale. In this respect, we agree with the following statement made by a court

of a sister state: 'It seems to us a distortion to take what is, at least arguably, a sale, twist it into the shape of a service, and then employ this transformed material in erecting the framework of a major policy decision': Russell v. Community Blood Bank, Inc., 185 So. 2d 749, 752 (Fla. Ct. App. 1966). In view of our case law implying warranties in non-sale transactions, it cannot be said with certainty that no recovery is permissible upon the claim here made, even if it should ultimately be determined that the transfer of blood from a hospital for transfusion into a patient is a service: See also, Note, A New Principle of Products Liability in Service Transactions, 30 U. Pitt. L. Rev. 508 (1969)." 439 Pa. 507.

Defendant is seeking to revive the same narrow compartments rejected in the Misericordia decision. To say that a warranty is implied in a sale is not to say that none is implied if the user purchases a service.

In selling gas service, as opposed to a motor vehicle or a piece of machinery, the delivery of the product is made to a distribution system under the exclusive control of the seller or supplier. The buyer or user not only purchases the service or product, but becomes part of and dependent upon the distribution system and has no control against defects, not only in the gas piped through the meter but in the mains or pipes which bring the product to the neighborhood, the street and the curbline. In buying the product, i.e., natural gas, the buyer is exposed to the hazards of the entire sytem of distribution.

Pennsylvania appellate courts have repeatedly declared that social policy considerations underline the imposition of strict liability (or breach of war-

ranty) and rests upon the public interest in safeguarding the consumer from the inability to protect against harm caused by malfunctioning or defective products.

In a very similar case involving electric service, Judge Louik of this court stated as follows:

"In the case of a public utility which manufactures, distributes, retails and continuously maintains its product, the above-recited socioeconomic factors are particularly applicable. The imposition of warranty liability upon Duquesne Light flows naturally from its position of total responsibility for its electrical service. Defendant has complete control of electricity to the point of its entry into the customer's building." Wivagg v. Duquesne Light Co., 73 D. & C. 2d 694, 701 (1975).

In Gardiner v. Philadelphia Gas Works, 413 Pa. 415, 420, 197 A. 2d 612 (1964), it was recognized that the supplying of gas to a residential customer on a month-to-month basis was a contract of sale under section 2-106 of the code, 12A P.S. §2-106. In the instant proceeding, plaintiffs have alleged a specific defect in the gas product—i.e., the failure to provide the additives to odorize the natural gas.

As recently stated in Francioni v. Gibsonia Trust Corp., supra, at p. 367:

"What is crucial to the rule of strict liability is not the means of marketing but rather the fact of marketing, whether by sale, lease or bailment, for use and consumption by the public. Link v. Sun Oil Co., Ind. App., 312 N.E. 2d 126, 130 (1974); Whitefield v. Cooper, 30 Conn. Sup. 47, 298 A. 2d 50 (1972); Delaney v. Towmotor Corp., 339 F. 2d 4, 6 (2d Cir. 1964). Where the fundamental principles are applicable, the imposition of artificial distinctions will only frustrate the intended purpose."

While the Francioni case concerned the extension of strict liability to a bailment, the same principle of social policy applies in the instant proceedings. Further, where the manufacturer-seller is responsible to third party bystanders, it would approach the ridiculous to limit the sellers warranty, pipeline by pipeline. The gas was placed in the distribution lines in its final state—ready for sale and consumption by the consumer. There was no change in the product as it entered the various lines. Pursuant to the allegations of the complaint, we believe that plaintiff has averred a cause of action in counts 2 and 3 of the complaint.

It is defendant's further position that paragraph 8 alleges injury to both real and personal property and bodily harm to individuals on the property. As plaintiff has not claimed damages to real property or personal injury, these allegations are confusing and require clarification.

Based upon the above discussion, an appropriate order is attached hereto.

## ORDER

And now, March 8, 1978, upon the preliminary objections of defendant in the nature of a demurrer to counts 2 and 3 of the complaint, and motion to strike and for a more specific pleading, it is hereby ordered, adjudged and decreed that said preliminary objections in the nature of a demurrer and motion to strike are denied and the motion for a more specific pleading in paragraph 8 of the complaint is sustained.

It is further ordered that plaintiff is granted 14 days to clarify the allegations in paragraphs 8 and 24 of the complaint.