## Vallino v. Columbia Accident & Health Insurance Company

*Ira R. Mazer*, for plaintiff.

*Joseph Friedman* and *John F. Perry*, for defendant.

FINKELHOR, *J.*, May 10, 1978—The above matter is before the court on the preliminary objections of defendant, Columbia Accident & Health Insurance Company, in the nature of a demurrer to counts two and three of plaintiff's amended complaint and a motion to strike the claim for punitive damages. This suit stems from the refusal of defendant company to make payment to plaintiff-insured under a disability income policy and the unilateral cancellation of said policy. Plaintiff

seeks recovery, not only for breach of the insurance contract (count one) but in trespass for dereliction of the insurer's duty to deal in good faith (count two) and misrepresentation of the terms of the agreement (count three). Defendant's motion is limited to the trespass counts.

Thus, the issue underlying defendant's preliminary objections is whether plaintiff-insured has stated a cause of action in tort for refusal to honor an insurance agreement. It is defendant's position that plaintiff's relief, if any, is limited to an action in assumpsit and, further, that the facts, as stated, do not prove the alleged breach of faith.

It is well established that in ruling on preliminary objections in the nature of a demurrer, the court is limited to the facts, set forth in the pleadings, and must accept as true all well-pleaded material facts and the inferences reasonably deducible therefrom. A demurrer can only be sustained where it appears with certainty that plaintiff has failed to state a cause of action and any doubts must be resolved in plaintiff's favor: Firing v. Kephart, 466 Pa. 560, 353 A. 2d 833 (1976); Bear v. Reformed Mennonite Church, 462 Pa. 330, 341 A. 2d 105 (1975); Clouser v. Shamokin Packing Co., 240 Pa. Superior Ct. 268, 361 A. 2d 836 (1976).

The facts, as set forth in the complaint, are briefly as follows.

On or about November 12, 1974, defendant, a Pennsylvania-based insurance company, issued a guaranteed renewal disability income insurance policy to plaintiff to provide disability insurance of 24 monthly payments at $300 per month in the event of total disability. The effective date of the policy was September 12, 1974, with an initial premium payment of $101 and $91 to be paid

semi-annually thereafter. A copy of the policy was attached to plaintiff's complaint and included an endorsement to exclude disabilities resulting from disc disorders or "any disorder of the spine, sacroiliac or lumbar region or complications thereof." The policy further provided for renewal until the age of 65 by the timely payment of premiums.

Premiums were paid by plaintiff in a timely fashion up to and including March of 1975 when plaintiff was injured[1] at work. Proper notice was given of the injury to defendant but the disability payment of $300 per month, as set forth in the policy, was refused.

Plaintiff further alleges that defendant-insurer unilaterally and without notice cancelled the policy and seeks punitive or exemplary damages.

It is plaintiff's contention, under the facts alleged, that defendant breached its implied duty of good faith and fair dealing in handling the claim of plaintiff and terminating the agreement and that, under the Unfair Insurance Practices Act of July 22, 1974, P.L. 589, 40 P.S. §1171.1 et seq., the insured may bring an action in trespass to recover for damages caused by unfair insurance practices including punitive damages. It is plaintiff's further contention that the cancellation of the policy was contrary to the terms of the policy itself and therefore the essential elements of a cause of action of misrepresentation are present. Plaintiff admits that there are no Pennsylvania cases specifically on this issue, but argues that changes in the law in other jurisdictions should be applied by the Pennsylvania courts.

---

1. Plaintiff has alleged injuries to his left leg and right knee and shock to his nervous system.

Defendant alleges, in its brief, that the insured failed to supply correct information in the application for the insurance policy. Ultimately, this may be a justification for defendant's refusal to pay and cancellation of the policy, but it is not properly before the court on preliminary objections.

## LIABILITY IN TORT

The traditional view that an insurance agreement is governed solely by the principles of contract law and that the breach of said agreement is limited to an action under the terms of the contract has been under judicial scrutiny in Pennsylvania and other jurisdictions. As noted by scholarly commentators, [2] the financial disparity of the parties to the insurance agreement produces unequal bargaining power. A contract of insurance, as opposed to an agreement between equals, may not be the result of a bargained-for exchange and the insured has little choice as to the terms of the agreement: Brakeman v. Potomac Ins. Co.*, 472 Pa. 66, 72 A. 2d 193, 196 (1977). The insured, who has contracted for protection against a specified loss,—i.e., fire, accident, disability—is frequently dependent on the carrier's prompt and good faith consideration of his claim to protect against further and more serious losses: 45 Fordham L. Rev. 164, supra, 167-71 (1976).

* Per Eagen, J., with two Justices concurring and dissenting and one Justice dissenting and two Justices not participating.

2. For a full discussion of these issues, see Good Faith and Fair Dealing in Insurance Contracts, 25 Hastings L. J. 699 (1974); The Availability of Excess Damages for Wrongful Refusal to Honor First Party Insurance Claims, 45 Fordham L. Rev. 164 (1976); First Party Torts, 25 Drake L. Rev. 900 (1976).

In Brakeman, supra, 472 Pa. 66, 72, 371 A. 2d 193, the court summarized the departure from a strict contractual approach as follows:

"The rationale underlying the strict contractual approach reflected in our past decisions is that courts should not presume to interfere with the freedom of private contracts and redraft insurance policy provisions where the intent of the parties is expressed by clear and unambiguous language. We are of the opinion, however, that this argument, based on the view that insurance policies are private contracts in the traditional sense, is no longer persuasive. Such a position fails to recognize the true nature of the relationship between insurance companies and their insureds. An insurance contract is not a negotiated agreement; rather its conditions are by and large dictated by the insurance company to the insured. The only aspect of the contract over which the insured can 'bargain' is the monetary amount of coverage."

The failure of the insurance carrier to process the claim of the insured in good faith—i.e., bad faith dealing—has been held in California and other jurisdictions to amount to an independent tort action, separate from breach of the contract: Gruenberg v. Aetna Insurance Co., 108 Cal. Rptr. 480, 510 P. 2d 1032 (1973); Spindle v. Travelers Ins. Cos., 136 Cal. Rptr. 404, 66 Cal. App.3d 951 (1977); Grand Sheet Metal Products Co. v. Protection Mutual Ins. Co., 34 Conn. Sup. 46, 375 A. 2d 428 (1977); Ledingham v. Blue Cross Plan for Hospital Care of Hospital Service Corp., 29 Ill. App. 3d 339, 330 N.E. 2d 540 (1975); Interstate Life & Accident Ins. Co. v. Hopgood, 133 Ga. App. 6, 209 S.E. 2d 703

(1974) (by statute); see also, Note, Good Faith and Fair Dealing in Insurance Contracts, supra.

The California Supreme Court, in Gruenberg, supra, reasoned that the duty of "good faith and fair dealing" is independent of the contract and attaches over and above the terms of the insurance agreement.

The court stated as follows: " 'A tort may grow out of or make a part of, or be coincident with a contract. The fact that there existed a contract between plaintiffs and the defendant would not immune the latter from the penalty that is ordinarily visited upon tort-feasors.' . . . Therefore, even though the duty allegedly assumed by defendant insurers arises from an existing contractual relationship, this duty is independent of the performance of plaintiff's contractual obligations." Gruenberg at 488.

While Gruenberg, supra, has been quoted in Pennsylvania appellate decisions, the concept of a separate action in tort for the breach of an insurance agreement has not been specifically adopted by Pennsylvania courts: Diamon v. Penn Mutual Fire Insurance Co., 247 Pa. Superior Ct. 534, 372 A. 2d 1218 (1977); Hamilton v. Hartford Accident and Indemnity Co., 425 F. Supp. 224 (E. D. Pa. 1977). Absent specific allegations of malice or fraud, Pennsylvania cases do not appear to recognize a separate cause of action in tort for a "bad faith" breach of the contractual agreement: Hoy v. Gronoble, 34 Pa. 9, 75 A.D. 628 (1859); Levine v. Roth, 70 Pitts. L. J. 340 (1921), aff'd 276 Pa. 244, 120 Atl. 115 (1923); 18 P.L.E. 640 §204. Cf. Rempel v. Nationwide Life Ins. Co., 227 Pa. Superior Ct. 87, 323 A. 2d 193 (1974); W. W. Coal

Co. v. Pa. National Mut. Insurance Co., 75 D. & C. 2d 621 (Somerset 1975).[3]

As early as 1957, the Pennsylvania Supreme Court recognized the special fiduciary relationship between the insurer and the insured under motor vehicle liability policies wherein the insurer had undertaken the defense of third party claims against the insured: Cowden v. Aetna Casualty and Surety Co., 389 Pa. 459, 134 A. 2d 223, 228 (1957). Thus, if the carrier has acted in bad faith and has refused to adjust the loss of a third party claimant, recovery, including excess damages flowing from the refusal to settle or negotiate, has been both permitted and recognized: Gedeon v. State Farm Mutual Automobile Insurance Co., 410 Pa. 55, 188 A. 2d 320 (1963); Gray v. Nationwide Mutual Insurance Co., 422 Pa. 500, 223 A. 2d 8 (1966). The effect of these decisions was to permit recovery by the insured of monies in *excess of the terms* of the contract agreement.

In the recent decision in Brakeman, supra, also involving a motor vehicle policy, the strict contractual approach was further rejected as inappropriate to the realities of the insurance agreement. The court held that the insurance carrier could not refuse coverage under a liability insurance policy on the ground of late notice, absent proof that the breach resulted in prejudice to its position. In Diamon, supra, the Superior Court reversed a summary judgment in favor of the insurance carrier who had refused to honor a fire insurance policy. In

---

3. An agent (and the carrier) have been held liable in tort for fraud or negligence in violation of the duty of diligence and good faith in failing to secure the agreed coverage.

reaching this decision, the Superior Court emphasized the good faith obligation of the carrier and found "implied in the policy was a promise by [the insurer] that it would exercise reasonable care in investigating a claim by [the insured]." At page 550.

It further stated: "The duty of good faith and due care in investigating the insured's claim thus implied in the contract is an express condition of the contract. Strict compliance is therefore required, and the detriment suffered by an insured who reasonably expected that a valid claim would be paid must be compensated for in damages." At page 552.

The crucial matter is not whether the count is labeled trespass or assumpsit, but whether the potential liability of the insurance carrier is limited to recovery under the specific terms of the agreement or whether the insured has a cause of action for the consequential damages stemming from the breach of the insurance contract. The "warranty" of good faith negotiations in the processing of claims by the insured would include the responsibility of the carrier for damages suffered by the insured as a result of improper conduct on behalf of the carrier.

In Grand Sheet Metal Products Co. v. Protection Mutual Insurance, 34 Conn. Sup. 46, 375 A. 2d 428, 429, the court defined the two possible approaches as follows:

"The defendant argues, citing the dissent of Roth, J., in Gruenberg v. Aetna Ins. Co., 9 Cal. 3d 566, 581, 108 Cal. Rptr. 480, 510 P. 2d 1032, that to make the jump from good faith and fair dealing as regards third parties to such liability for first-party dealings requires a fiduciary relationship. But that

is not so if sound logic dictates that the Gruenberg obligation is necessarily implicit in every insurance contract. The developing theories in this area often represent an overlapping of contract and tort law with some inevitable confusion. One approach to the *problem may be an extension of compensatory and punitive damages in contract actions.* This court, however, prefers to follow Gruenberg in focusing on a distinct tort cause of action." (Emphasis supplied).

In view of the present status of Pennsylvania law, we believe that plaintiff can recover consequential damages in excess of the contract terms where the carrier has failed to deal with the insured in "good faith"[4] and that such consequential damages may be recovered in an assumpsit action provided the allegations of bad faith are properly set forth in the complaint. While we might be persuaded by the logic of Gruenberg to divest the proceedings of the elements of a contract claim, we believe that such a shift in Pennsylvania law is the prerogative of the appellate courts. However, under the Diamon v. Penn Mutual decision, we cannot find that count two of the complaint is devoid of merit.

## MISREPRESENTATION

Defendant has also demurred to count three of the complaint which alleges that defendant misrepresented the terms of the insurance coverage concerning cancellation of the policy.

---

4. We do not believe the Unfair Insurance Practices Act of 1974 is relevant to these proceedings except to define the character of bad faith practices.

Section 525 of the Restatement 2d, Torts sets forth the tort of *fraudulent misrepresentation* as follows: "One who fraudulently makes a misrepresentation of fact, opinion, intention or law for the purpose of inducing another to act or to refrain from action in reliance upon it, is subject to liability to the other in deceit for pecuniary loss caused to him by his justifiable reliance upon the misrepresentation."

However, plaintiff has failed to allege that the termination provisions in the agreement were knowingly false or were made with a present intention not to perform as stated: Brentwater Homes, Inc. v. Weibley, 471 Pa. 17, 369 A. 2d 1172 (1977); Bata v. Central-Penn National Bank of Philadelphia, 423 Pa. 373, 224 A. 2d 174, cert. denied, 386 U.S. 1007 (1966); Edelstein v. Carole House Apts., Inc., 220 Pa. Superior Ct. 298, 286 A. 2d 658 (1971). Mere allegations of the violation of an agreement do not establish the tort of fraudulent misrepresentation.

## PUNITIVE DAMAGES

Defendant has moved to strike the allegation of punitive damages in the liquidated amount of $20,000. See Hudock v. Donegal Mutual Insurance Co., 438 Pa. 272, 264 A. 2d 668 (1970).

Restatement, Torts §908 defines punitive damages as an award "against a person to punish him for his outrageous conduct"—i.e., acts done with a bad motive and with a reckless indifference to the interests of others (Comment (b)). Section 908 has been adopted in Pennsylvania: Chambers v.

Montgomery, 411 Pa. 339, 192 A. 2d 355 (1963); W. W. Coal Co. v. Pennsylvania National Mutual Casualty Ins. Co., 75 D. & C. 2d 621 (Somerset 1975). While punitive damages are not recoverable for breach of contract, allegations of fraud and misrepresentation (tort) which meet the standard of outrageous conduct can support a claim for punitive damages: W. W. Coal Co., supra.

In the complaint, as stated, plaintiff has failed to allege the requisite elements to support his demand for exemplary relief and improperly claims punitive damages in a liquidated amount.

Based upon the above discussion, defendant's preliminary objections will be considered a motion for a more specific pleading and plaintiff will be granted 20 days to plead with specificity the breach of the warranty of good faith (count two), the elements of fraud and misrepresentation (count three) and the required elements of a claim for punitive damages (count three).

ORDER

And now, May 10, 1978, upon defendant's preliminary objections in the nature of a demurrer to counts two and three of plaintiff's amended complaint and motion to strike punitive damages, it is hereby ordered, adjudged and decreed that said objections are sustained as a motion for a more specific pleading as set forth in the attached opinion.

It is further ordered that the liquidated amount of punitive damages shall be stricken and plaintiff shall be granted 20 days to file an amended complaint.